**Pauline E. CHRISTENSEN and Phyllis Gohman, Plaintiffs,**

v.

**The STATE OF IOWA, et al., Defendants.**

No. C 74–2030.

United States District Court, N. D. Iowa, E. D.

Aug. 4, 1976.

David J. Dutton, Waterloo, Iowa, for plaintiffs.

John W. Sabbath, Cedar Falls, Iowa, Richard C. Turner, Atty. Gen. of Iowa, Des Moines, Iowa, for defendants.

McMANUS, Chief Judge.

This matter is before the court on defendants' resisted motion to dismiss.

Plaintiff seeks an adjudication that defendant has established at the University of Northern Iowa general practices of classifying jobs according to sex, of paying less for the services of female clerical employees than is paid to male employees who are performing comparable work and who have comparable qualifications, and of failing to hire and promote women to more responsible and remunerative positions because of their sex. Plaintiff posits two grounds for this court's assertion of jurisdiction: Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq. and the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq.

Defendants move to dismiss contending that this court lacks subject matter jurisdiction with respect to the FLSA claim[1] and citing National League of Cities et al. v. Usery, —— U.S. ——, 96 S.Ct. 2465, 49 L.Ed.2d 245, 44 USLW 4974 (1976), as dispositive. The court does not consider Usery dispositive and denies defendants' motion to dismiss.

*Motion to Dismiss*

■ Usery involved interpretation of the FLSA, as amended, and its applicability to employees of state and municipal governments or subdivisions thereof. The United States Supreme Court held that the 1974 amendments to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., insofar as they extended the Act's minimum wage and maximum hour provisions to state or local governments exceeded the power of the Commerce Clause, Article I, § 8, Cl. 3.

The instant case is brought in pertinent part under the equal pay provisions of the FLSA, which require employers to provide equal pay for equal work.[2]

The equal pay provisions became law as an amendment to the FLSA in 1963. Thereafter they became applicable to state and local government employers by virtue of the 1974 amendments at issue in Usery. It is conceded that both the statutory scheme at issue in Usery and the one at issue here are assertedly based on Congressional power derived from the Commerce Clause.[3]

However, it is the view of the court that Usery should be confined strictly to its factual context. There was no mention of the equal pay provisions of the FLSA in Usery nor any notion that these provisions were within the circumambience of that case. This is not a distinction without a difference. In Usery the court was concerned

---

1. In its motion to dismiss defendant draws no distinction between plaintiff's Title VII claim and plaintiff's FLSA claim and by virtue of Usery, infra, moves to dismiss the entire pleading as to all defendants. This broad-brush approach must fail. Usery provides no support for defendant's motion to dismiss plaintiff's Title VII claim. Important foundational distinctions exist between Title VII and the FLSA. See Fitzpatrick v. Bitzer, —— U.S. ——, 96 S.Ct. 2666, 49 L.Ed.2d ——, 44 USLW 5120 & 5122 n. 9 (1976). The court, consequently, will construe defendant's motion to dismiss as directed only to plaintiff's FLSA claim.

2. Title 29 U.S.C. § 206(d)(1) provides:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility and which are performed under similar working conditions . . . .

3. Section 2 of the Equal Pay Act of 1963 sets out the Congressional authority for enactment, stating in part: "It is hereby declared to be the policy of this Act, through exercise by Congress of its power to regulate commerce among the several States and with foreign nations, to correct the conditions above referred to [wage differentials based on sex] . . . ." U.S. Cong. & Adm.News, at 59 (June 10, 1963).

with effecting an accommodation between the 10th Amendment and the Commerce Clause. The statutory scheme there at issue exceeded the scope of the Commerce Clause and impinged on interests reserved to the states because it was directed at *states qua states.*

In that context the touchstone advanced for resolution of the competing constitutional considerations was: whether the integral functions at issue were "functions essential to separate and independent existence" of the states. *Usery, supra,* at ——, 96 S.Ct. at 2471, 44 USLW at 4977. In determining that the functions regulated there, minimum wages and maximum hours, were within the traditionally separate and independent role of the states and thus beyond the purview of Commerce Clause power, the court considered "fundamental employment decisions" upon which the states system for administering the public law and furnishing public services rested. *Id.,* at ——, 96 S.Ct. 2465, 44 USLW at 4979. Therefore, the ability to structure employer-employee relationships at issue in *Usery* was held to be an "attribute of sovereignty" which may not be impaired by Congress.

It is difficult to say that the capacity of a state or its subdivision to direct that different pay be accorded for comparable work, based solely on the sex of the worker, is a function "essential to separate and independent existence" of the state. Congress has not sought here, as in *Usery,* "to wield its power in a fashion that would impair the States' 'ability to function effectively [with]in a federal system.'" *Id.* It has simply sought to extend the proscription of discrimination in pay on the basis of sex to the states and their subdivisions. Such discrimination cannot validly be considered a "fundamental employment decision" upon which the state's system for administering public laws and public services rests. Likewise, the ability to exercise such discrimination is not, consistent with equal protection, an "attribute of sovereignty." Consequently the power exercised here in the form of the equal pay provisions of the FLSA is supported by the Commerce Clause and effective against the defendants.

### Motion to Limit Evidence

In their motion filed July 28, 1976, defendants seek to have Al Perry, Lewis E. Glenn, George Schmidt and Janette Birum excluded as witnesses at trial because they were not disclosed in accordance with the deadline set out in this court's final pretrial order.

Plaintiffs resist this motion, asserting that their failure to comply was the result of the defendants' failure to properly answer certain interrogatories.

Defendants' motion is well taken. On October 17, 1975 this court through the magistrate entered an order for completion of discovery by not later than April 5, 1976. This was intended to be the final date for all discovery to be completed, including the filing of motions to compel. Despite this order and FRCP 29, counsel had apparently failed to complete discovery at the time of the final pretrial conference and accordingly were given until July 1, 1976 to file their witness lists. Plaintiff has failed to comply with this order by failing to disclose the above witnesses until July 23, 1976.

This court expects counsel to abide by its orders in good faith and feels that unless sanctions are imposed when they are ignored without good cause, they will be meaningless. Here the court does not feel plaintiff has shown good cause for noncompliance. Accordingly, the named witnesses will be excluded at trial.

It is therefore

ORDERED

1. Motion to dismiss denied.

2. Motion to limit evidence granted.