**W. J. USERY, Jr., Secretary of Labor, United States Dept. of Labor, Plaintiff,**

v.

**DALLAS INDEPENDENT SCHOOL DISTRICT, Defendant.**

Civ. A. No. CA-3-7975-D.

United States District Court, N. D. Texas, Dallas Division.

Oct. 19, 1976.

---

William J. Kilberg, Solicitor of Labor, Ronald M. Gaswirth, Regional Solicitor, Lois Williams, Robert A. Fitz and Caruthers G. Berger, U. S. Dept. of Labor, Dallas, Tex., for plaintiff.

Lee Smith and Robert W. Smith, Dallas, Tex., for defendant.

MEMORANDUM OPINION AND ORDER

ROBERT M. HILL, District Judge.

The motion of the Dallas Independent School District (DISD), defendant, to dismiss this claim under the authority of *National League of Cities v. Usery*, —— U.S. ——, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976) came on for consideration before the Honorable Robert M. Hill, United States District Judge. The court has considered the motion and the briefs of counsel and is of the opinion that it should be denied.·

I.

■ The present case involves a challenge to the Equal Pay Act provision of the Fair Labor Standards Act. 29 U.S.C. § 206(d). DISD asserts that application of the Equal Pay Act to it, a political subdivision of the State of Texas, is an unconstitutional infringement of state sovereignty under the authority of *National League of Cities*. A cursory reading of *National*

*League of Cities* refutes DISD's simplistic contention that this recent decision directly controls the instant case. Nowhere in *National League of Cities* does the Court indicate that the entire Fair Labor Standards Act is now a nullity as applied to states and municipalities. Following its analysis of the fiscal impact of overtime and minimum wage provisions, the Court's holding is specific:

> Our examination of the effect of the 1974 amendments, as sought to be extended to the States and their political subdivisions, satisfies us that *both the minimum wage provisions and the maximum hour provisions* will impermissibly interfere with integral government functions of these bodies.

—— U.S. at ——, 96 S.Ct. at 2473, 49 L.Ed.2d at 257 (emphasis added). Later in the same paragraph the Court states:

> . . . [T]he dispositive factor is that Congress has attempted to exercise its Commerce Clause authority to prescribe *minimum wages and maximum hours* to be paid by the States in their capacities as sovereign governments.

*Id.* (emphasis added).

Although the opinion speaks frequently of the "1974 amendments to the Fair Labor Standards Act," as the subject matter of its analysis, the Court's lengthy discussion and examples of the effects of these amendments make quite clear that the Court is ruling on the extension through these amendments of the minimum wage and overtime provisions. Nowhere does the Court discuss the effect of or even mention the existence of the sex discrimination provisions of the Fair Labor Standards Act. The extension of the Equal Pay Act through these amendments is easily separable, as discussed *infra*, and is not even footnoted by the Court in this opinion.

The amendments in themselves, which are merely an *extension* of coverage to the States, are not objected to in *National League of Cities.* If DISD reads this case

to hold that Congress cannot *extend* any legislation under the Commerce Clause to the States, it labors under a profound misunderstanding. The court overturned the 1974 amendments to the Fair Labor Standards Act, because of *what* they extended to the States—minimum wage and overtime provisions. It therefore overturned these amendments only in so far as they extended the objectionable provisions to the States.

## II.

■ Because *National League of Cities* does not directly dispose of the Equal Pay Act's application to the States, DISD strenuously urges that the Equal Pay Act and the minimum wage and overtime provisions must hang together. Since the Supreme Court has condemned the latter, the former must also perish because it is "integral and inseparable" under the Fair Labor Standards Act. The sole reasons alleged by DISD for this inseparability are that the two sections contain common definitions and are grounded in the same constitutional grant of power—the Commerce Clause. If these were sufficient reasons to invalidate an entire act whenever a section was stricken, the Internal Revenue Code and similar enactments would enjoy only the most ephemeral life.

Since Congress does not wish to be required to rewrite and reenact portions of the United States Code every session, it ordinarily inserts a separability clause in each piece of legislation. Indeed, there is such a clause in the Fair Labor Standards Act, 29 U.S.C. § 219:

> If any provision of this [Act] or the application of such provision to any person or circumstance is held invalid, the remainder of the Act and the application of such provision to other persons or circumstances shall not be affected thereby.

The normal presumption of divisibility created by this language[1] is even stronger in

---

1. In construing an almost identical provision, the Court stated:

This provision reverses the presumption of inseparability—that the legislature intended the Act to be effective as an entirety or not at

the case of this particular statute since the equal pay provisions have a different legislative history and serve an entirely different policy than the minimum wage and overtime provisions. The Equal Pay Act is for all purposes separate legislation. Congress inserted it into the Fair Labor Standards Act for the administrative convenience of using its well-established enforcement machinery.[2] For these reasons the court concludes that the constitutional defects of the minimum wage and overtime provisions as applied to the States do not invalidate the entire Fair Labor Standards Act as applied to the States.

### III.

*National League of Cities* has not therefore undercut the Equal Pay Act with its holding. But it may arguably vanquish this legislation by virtue of its bold language and irresistible sweep. DISD has so construed *National League of Cities* as the call for a new crusade to wrest the Holy Sepulchre of States' rights from the caliphs in Washington under the banner of the Tenth Amendment.

While *National League of Cities* does effect a modest resurrection of state sovereignty, this court doubts, in the absence of any further indication from the Supreme Court, that *National League of Cities* is intended to generally and fundamentally alter the balance of state and federal power. The interests involved in *National League of Cities* and its ratio decidendi suggest it should be applied very conserva-

tively in overturning social and economic policies of the Congress.

■ It should initially be observed that the Court in *National League of Cities* emphasized that its reasoning applied only to powers exercised under the Commerce Clause. It specifically declined to make any such analysis with respect to the Spending Power, the Fourteenth Amendment, or the War Power. —— U.S. at ——, 96 S.Ct. at 2474 n. 17, 2475, n. 18, 49 L.Ed.2d at 258 n. 17, 259 n. 18. If the Equal Pay Act could also be plausibly sustained by any other Congressional power, such as the Fourteenth Amendment, courts would be bound to sustain it on the latter basis.[3]

■ The legislative history of the Equal Pay Act shows some concern for the effect of sex discrimination on commerce. But the primary impetus for this bill, like similar legislation enacted in the last two decades, was to eradicate the social injustice of discrimination perceived as evil in itself. Although sex discrimination has not yet been termed a "suspect classification," it has received a high degree of protection under the Fourteenth Amendment, regardless of the label applied to that protection. *E. g., Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). The application of the Equal Pay Act to the States could therefore be easily sustained under the Fourteenth Amendment.

all. Congress has established the opposite presumption of divisibility. [citations omitted]. Congress has thus said that the statute is not an integrated whole, which as such must be sustained or held invalid. On the contrary, when validity is in question, divisibility and not integration is the guiding principle. Invalid parts are to be excised and the remainder enforced. . . .
*Electric Bond & Share Co. v. Securities and Exchange Comm.* 303 U.S. 419, 434, 58 S.Ct. 678, 683, 82 L.Ed. 936 (1938).

**2.** "Such utilization [of the Fair Labor Standards Act] serves two purposes: First, it eliminates the need for a new bureaucratic structure to enforce equal pay legislation; and second, compliance should be made easi-

er because both industry and labor have a long-established familiarity with existing fair labor standards provisions."
U.S.Code Cong. & Admin.News pp. 687, 688 (1963).

**3.** It does not matter that Congress relied specifically on the Commerce Clause. The maxim of judicial review is well-established that enactments by Congress are presumptively constitutional. If a court can sustain legislation on the basis of any power in the Constitution, it will do so. One attacking a Congressional enactment must demonstrate either that it lacks any plausible basis in the Constitution or that it violates a specific limitation in the Constitution.

■ One need not belabor the total inapplicability of the *National League of Cities* rationale to legislation under aegis of the Fourteenth Amendment. There is no balance for the courts to strike between the Tenth and Fourteenth Amendments. *Cf. Fitzpatrick v. Bitzer,* —— U.S. ——, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Whatever powers are reserved to the States, the power to discriminately oppress its own citizens on the basis of social criteria is not among them.

The existence of other sources of constitutional authority for the Equal Pay Act is a peripheral issue, however, considering the near plenary power of the Commerce Clause, even after its laceration in *National League of Cities.* Given the immense weight of authority extending the reach of this power, beginning with *Gibbons v. Ogden,* 21 U.S. 1, 6 L.Ed. 623 (1824), continuing through the pervasive economic legislation of the Thirties, *e. g., Wickard v. Filburn,* 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942), and the far-reaching social legislation of the Sixties, *e. g., Heart of Atlanta Motel v. United States,* 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964), this court must conclude that affirmative limitations on the legitimate exercise of the commerce power are few. *National League of Cities,* read against its factual background and even recent pronouncements of the same Court, suggests that any limitation imposed by the Tenth Amendment is itself limited by the following considerations:

First, *National League of Cities* variously characterizes the protected area of state sovereignty in terms of "functions essential to separate and independent existence," —— U.S. at ——, 96 S.Ct. at 2471, 49 L.Ed.2d at 254; activities of the "States qua States," —— U.S. at ——, 96 S.Ct. at 2472, 49 L.Ed.2d at 255; and "integral government functions," —— U.S. at ——, 96 S.Ct. at 2473, 49 L.Ed.2d at 257. This opinion does not detail the earmarks of an "integral government function." Its criterion seemingly has nothing to do with the nature of the services which the state government provides its citizens, so long as the functions are "traditional." The opinion, for example, lumps together vital services such as police and fire protection with the far less essential activity of recreation. —— U.S. at ——, 96 S.Ct. at 2473, 49 L.Ed.2d at 257. The federal government cannot apparently dictate minimum wages for the city policeman or the janitor at a livestock show under county sponsorship.[4]

The emphasis in *National League of Cities* on regulation of the State as *employer,* —— U.S. at ——, 96 S.Ct. at 2468, 49 L.Ed.2d at 251, and its condemnation of the Congress displacing "state policies regarding the manner in which they will structure delivery" of governmental services, —— U.S. at ——, 96 S.Ct. at 2472, 49 L.Ed.2d at 256, indicates to this court that the protected activities must relate to internal, administrative, management, or housekeeping functions. Wage and overtime employment decisions would be the prototype of such internal activities. The Court's example of the State power to locate its own seat of government, —— U.S. at ——, 96 S.Ct. at 2471, 49 L.Ed.2d at 254, would furnish another example. A state government would still lack any protection from application of the Commerce Clause in those activities involving a significant interface with the public domain, e. g., the sale of commodities to the public.[5]

■ Second, even if the exercise of the commerce power affects the State within this protected zone, it must substantially disrupt state operations before the Tenth Amendment comes into play. *National League of Cities* found that the minimum wage and overtime provisions were displacing "functions essential to separate and independent existence" of the States and generally proved to be "highly disruptive of accepted employment practices in many

4. Tex.Civ.Stat.Ann. 2372d (1971).

5. See *National League of Cities,* —— U.S. at ——, 96 S.Ct. at 2475 n. 18, 49 L.Ed.2d at 259 n. 18, noting the continued vitality of *Case v. Bowles,* 327 U.S. 92, 66 S.Ct. 438, 90 L.Ed. 552 (1946) (upholding price controls applied to the sale of timber by the State of Washington).

governmental areas." —— U.S. at ——, 96 S.Ct. at 2472, 49 L.Ed.2d at 256. The opinion gives several examples of crushing budget changes and abandonment of local programs under the economic coercion of federal minimum wage and overtime requirements, implying that such legislation must impose a drastic and disruptive cost of doing business on the State. In this regard, it is self-evident that a license to penalize employees for their sex is not a function essential to the State's "separate and independent existence." If the States find prohibitive the costs of increasing women's wages to a standard level to be paid both sexes, the Supreme Court has now given its benediction to the States' reducing men's wages to any convenient substandard level to be paid both sexes.[6] The Equal Pay Act thus imposes no burden whatsoever on the States.

■ Finally, even if an exercise of the commerce power does substantially disrupt an "integral government function," it is nonetheless valid if the State interest is outweighed by a national policy. *National League of Cities* specifically attempts to reconcile its holding with *Fry v. United States*, 421 U.S. 542, 95 S.Ct. 1792, 44 L.Ed.2d 363 (1975), which upheld the application of price controls to State wages. The Court in *Fry* evidently considered that the national economic interest in wage and price controls was paramount to the state interest in setting its own wages. Five members of the Court in *National League of Cities* evidently considered the national interest in minimum wage and overtime provisions to be subordinate to the state fiscal and administrative interests involved. The two opinions can be reconciled only on the basis of an ad hoc balancing[7]—a conclusion strongly reinforced by the concurring opinion of Justice Blackmun.

■ Therefore, analogy to *National League of Cities* does not invalidate the Equal Pay Act.[8] The Commerce Clause, even after *National League of Cities*, retains sufficient fabric to cover the activities regulated by the Equal Pay Act. This blanket power may, of course, reveal more lacunae if the Supreme Court tailors further trappings for the Tenth Amendment. As yet, however, such accoutrements remain uncut, and *National League of Cities* constitutes a narrow excision from the whole cloth.

For these reasons, the defendant's motion to dismiss is denied.

It is so ORDERED.

---

6. *National League of Cities* would presumably invalidate the § 206(d)(1) proviso as applied to the States.

7. Assuming, arguendo, that the Equal Pay Act did substantially encroach on "integral" state functions, this court finds that the policies of social justice underlying the legislation outweigh the State interest in exploiting employees because of their sex.

8. Other courts have reached the same conclusion. See *Christensen v. Iowa*, 417 F.Supp. 423 (1976) (N.D.Iowa); cf. *Usery v. Salt Lake City Board of Education*, 45 U.S.L.W. 2155 (September 28, 1976) (D.Utah).