W. J. USERY, Jr., Secretary of Labor, United States Department of Labor, Plaintiff,

v.

EDWARD J. MEYER MEMORIAL HOSPITAL, ERIE COUNTY and Albert C. Rekate, Individually and as Acting Director of Edward J. Meyer Memorial Hospital, Defendants.

Civ. No. 71–453.

United States District Court,
W. D. New York.

April 4, 1977.

Francis V. LaRuffa, Regional Sol., Dept. of Labor, New York City, for plaintiff; Louis D. DeBernardo, New York City, of counsel.

James L. Magavern, Erie County Atty., Buffalo, N.Y., for defendants; Roger J. Wittig, Asst. County Atty., Buffalo, N.Y., of counsel.

## MEMORANDUM AND ORDER

ELFVIN, District Judge.

The Secretary of Labor is seeking to enforce the equal pay provisions of the Fair Labor Standards Act ("the FLSA"), as amended, 29 U.S.C. § 206(d)(1).[1] The complaint now alleges that Edward J. Meyer Memorial Hospital, which is owned and operated as a public general hospital by Erie County, has discriminated on the basis of sex by paying wages to female "cleaners" at a rate less than the rate paid to male "laborers" for jobs requiring equal skill, effort and responsibility and performed under similar working conditions.

This matter is now before me on defendants' motion to dismiss for lack of subject matter jurisdiction, for failure to state a claim upon which relief can be granted and for failure to present a federal question in

---

1. "No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a

merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex * * *."

Sections 203(d) and 203(x) bring "a political subdivision of a State" and "the government of a * * * political subdivision" of a State within the ambit of the term "employer".

Certain allegations of the original complaint were premised upon the minimum wage and overtime pay provisions of the FLSA, 29 U.S.C. §§ 206(a)(1) and 207, but said allegations have been dismissed by stipulation.

light of the Supreme Court's decision in *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976).[2] Therein the Court held that the minimum wage and overtime pay provisions of the FLSA constitutionally could not be applied to states or their political subdivisions, such as counties. The effect of this decision was to remove those workers employed by the states and their subdivisions from the protective umbrella of the minimum wage and overtime pay provisions of the FLSA. The various states in their sovereign capacities were thus free to structure their wage scales and to formulate their employment policies without compliance with the federal requirements that an employee be compensated at a certain minimum rate for his labor and that a premium wage scale be paid for labor performed above forty hours per workweek.

In its opinion, the Supreme Court stated that the sovereign power of the states undoubtedly included their right to determine the wages to be paid to public servants employed to perform the states' governmental functions, the hours those employees will work and what compensation will be paid where their employees are required to work overtime. Recognizing that the economic policy chosen by Congress with respect to the minimum wage and overtime pay provisions of the FLSA operates directly to supplant the states' considered judgments as to how to structure pay scales in state employment, the Court concluded that these provisions "will impermissibly interfere with the integral governmental functions" of the states. (*Id.,* at 851, 96 S.Ct., at 2473.)

It should be noted that the Supreme Court's opinion in *National League of Cities* was not intended to be a sweeping curtailment of the power that Congress could exercise pursuant to the Commerce Clause of the United States Constitution, Article I, § 8, cl. 3. The language of the opinion was carefully tailored and tightly circumscribed to hold clearly that the states did not possess the sovereign power to act with complete freedom in all areas of employment unfettered by the will of Congress as expressed in federal legislation enacted pursuant to Congress's broad power to regulate interstate commerce. The Court only decided that, insofar as the minimum wage and overtime pay provisions of the FLSA operated "to directly displace the States' freedom to structure integral operations in areas of traditional governmental functions, they are not within the authority granted Congress by Art. I, § 8, cl. 3." (*Id.,* at 852, 96 S.Ct. at 2474.) Such wage scale and employment decisions must remain within the sovereign power of the states, the Court reasoned, to ensure their separate and independent existence within the federal system. Only the issue of the constitutionality of the minimum wage and overtime pay provisions as applied to the states was before the Supreme Court in *National League of Cities* and the ultimate holding there did not venture beyond that specific issue. No intimations were expressed as to the constitutional validity of other provisions of the FLSA in their application to state employees.

That the opinion in *National League of Cities* was not meant as a broad expression that the Commerce Clause power could not be utilized to restrict the employment and wage policies of the states in any instance can also be gleaned from the Court's explicit approval and reaffirmation of *Fry v. United States,* 421 U.S. 542, 95 S.Ct. 1792, 44 L.Ed.2d 363 (1975); *Parden v. Terminal R. Co.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); *California v. Taylor,* 353 U.S. 553, 77 S.Ct. 1037, 1 L.Ed.2d 1034 (1957), and *United States v. California,* 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567 (1936).[3]

---

**2.** Defendants' motion papers also claim that there is no jurisdiction over the person (sic) of the defendants but there is nothing re this in the underlying affidavit and it is noted defendants have answered the complaint herein December 6, 1971.

**3.** Certain dicta found in the opinion in *United States v. California* was declared as "simply wrong" but its holding was approved.

(*Id.*, 426 U.S. at 854, fn. 18, 96 S.Ct. 2465.) Those cases upheld, on the facts and circumstances presented therein and because of the overriding federal interests in regulating interstate commerce in a national economy, federal legislation enacted pursuant to the Commerce Clause which impinged to a substantial degree upon the power of the states to adopt independent economic policies.

Furthermore, the concurring opinion of Mr. Justice Blackmun in *National League of Cities* [4] noted that the Court's holding, in his opinion, adopted a balancing approach and did not curtail Congressional power pursuant to the Commerce Clause where the federal interest is demonstrably greater than the state's interest in exercising its sovereignty apart from federal interference and where imposition of federal standards upon the state would be essential to ensure that the federal interests are safeguarded.

Four days after its decision in *National League of Cities,* the Supreme Court decided *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).[5] That case unanimously sustained the constitutionality of the 1972 amendments to Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.,* which extended the application of Title VII to state and local governmental employers. In so holding, the Court stated that Congress had adequate legislative authority pursuant to Section 5 of the Fourteenth Amendment to provide for private suits against the various states in the context of employment discrimination notwithstanding the limitations imposed by the Eleventh Amendment. In addition to holding explicitly that Congress may prohibit employment discrimination on the basis of race, color, religion, sex and

national origin by the states and their governmental agencies and political subdivisions pursuant to the enforcement provisions of the Fourteenth Amendment, the ruling in *Fitzpatrick* seems to indicate that the federal interest in eradicating invidious discrimination in employment practices is of such significance that Congress may appropriately legislate to the fullest extent of its constitutional powers against such discrimination and need not derive such legislative authority solely from the Fourteenth Amendment. Mr. Justice Brennan, in his concurring opinion, expressed the view that Congressional authority to enact the provisions of Title VII which extended the prohibition against employment discrimination to the states can be found in both the Fourteenth Amendment and the Commerce Clause. (*Id.,* at 458, 96 S.Ct. 2666.)

The Third Circuit Court of Appeals recently ruled on the same constitutional issue which must be decided in the case at hand. In *Usery v. Allegheny County Institution Dist.,* 544 F.2d 148 (1976), that court held that the equal pay provisions of the FLSA could constitutionally be applied to state and local government employers because Congress has appropriate legislative authority to apply such prohibitions to the states pursuant to its Fourteenth Amendment power to prohibit sex discrimination in employment. The opinion in *National League of Cities* was interpreted as holding merely that the minimum wage and overtime pay provisions of the FLSA could not be constitutionally applied to state employers as a regulation of interstate commerce pursuant to the Commerce Clause, but did not restrict Congress's power to prohibit employment discrimination based upon the enforcement provisions of the Fourteenth

---

**4.** Mr. Justice Blackmun's views are particularly to be noted as limiting possibly overbroad interpretations of the Court's holding. He was one of five Justices joining in the majority's opinion and the remaining four Justices dissented therefrom. Without his concurrence the lower court's dismissal of the complaint for failure to state a claim upon which relief might be granted would be deemed to have been affirmed.

Also, while the Court expressly overruled *Maryland v. Wirtz,* 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968), the Court took passing note of "obvious differences between the schools and hospitals involved in *Wirtz,* and the fire and police departments affected here." 426 U.S., at 855, 96 S.Ct., at 2476.

**5.** The majority opinions in both cases were authored by Mr. Justice Rehnquist.

Amendment. It was noted that the Supreme Court in *Fitzpatrick* made clear that Congress has Fourteenth Amendment power to prohibit sex discrimination in employment and that such power extends to the states as employers. Although the legislative history of the equal pay provisions of the FLSA does not explicitly rely on the Fourteenth Amendment as the source of Congressional authority, it was held that, in exercising the power of judicial review, the *actual* power of the federal government is at issue and that a reviewing court is not limited to the source of power recited in the statute or its legislative history. The Third Circuit Court of Appeals then concluded that the equal pay provisions of the FLSA were enacted pursuant to Congress's Fourteenth Amendment powers and were not based upon its power to regulate interstate commerce granted in the Commerce Clause.

In *Usery v. Dallas Independent School Dist.*, 421 F.Supp. 111 (N.D.Tex.1976), it was held that the application of the equal pay provisions of the FLSA to state and local governments was a constitutional exercise of Congressional power pursuant to the Commerce Clause. The court interpreted the Supreme Court's decision in *National League of Cities* as being limited to the minimum wage and overtime pay provisions of the FLSA because such legislation when applied to state employers infringed upon and displaced "functions essential to separate and independent existence" and were "highly disruptive of accepted employment practices in many governmental areas." With respect to the equal pay provisions, the court held that employment discrimination on the basis of sex was not a legitimate state interest and was not a function essential to the separate and independent existence of the states. The court read the holding in *National League of Cities* narrowly and not as significantly altering the balance of state and federal power and concluded that Congress has sufficient power pursuant to the Commerce Clause to legislate against sex discrimination in the employment practices of the states.[6]

*Christensen v. State of Iowa*, 417 F.Supp. 423 (N.D.Iowa 1976), held that, because discrimination based on sex could not validly be considered a "fundamental employment decision" of state or municipal governments and could not be considered an "attribute of sovereignty", Congress had ample power under the Commerce Clause to enact the equal pay provisions of the FLSA and to make them applicable to the states and their political subdivisions. Other district court decisions also have upheld the Equal Pay Act's applicability to a state's political subdivisions. See, for example, *Usery v. Washoe County School District*, 79 LC 47555 (¶ 33,438) (D.Nev.1976),[7] *Usery v. Bet-*

---

**6.** Significantly, the court in *Dallas Independent* alluded to the Fourteenth Amendment as one of the foundations of Section 206(d)(1). Although the "bottom line" was that the equal pay provisions find sufficient legislative support in the Commerce Clause, the opinion (421 F.Supp., at 114) does state:

"It should initially be observed that the Court in *National League of Cities* emphasized that its reasoning applied only to powers exercised under the Commerce Clause. It specifically declined to make any such analysis with respect to the Spending Power, the Fourteenth Amendment, or the War Power. * * * If the Equal Pay Act could also be plausibly sustained by any other Congressional power, such as the Fourteenth Amendment, courts would be bound to sustain it on the latter basis. [fn.: It does not matter that Congress relied specifically on the Commerce Clause. The maxim of judicial review is well-established that enactments by Congress are pre-

sumptively constitutional. If a court can sustain legislation on the basis of any power in the Constitution, it will do so. One attacking a Congressional enactment must demonstrate either that it lacks any plausible basis in the Constitution or that it violates a specific limitation in the Constitution.]

" * * * Although sex discrimination has not yet been termed a 'suspect classification', it has received a high degree of protection under the Fourteenth Amendment, regardless of the label applied to that protection. * * * The application of the Equal Pay Act to the States could therefore be easily sustained under the Fourteenth Amendment."

**7.** This brief handling of defendant school district's motion to dismiss an Equal Pay Act complaint clearly shows the dual bottoming of this legislation and concludes: "Inasmuch as the substance of plaintiff's complaint falls within the Civil Rights Act of 1964, as well as the

tendorf Community School District, 423 F.Supp. 637 (S.D.Iowa 1976), and Usery v.

Equal Pay Act of 1963, there can be no question regarding the power of Congress to legislate under the Fourteenth Amendment with respect to discrimination in employment practices."

8. Except that the court was dealing in Bettendorf with defendant's motion for summary judgment and in Fort Madison with defendant's motion to dismiss, the Honorable William C. Stuart penned identical opinions in those cases. At 423 F.Supp. 639 and 79 LC 47507, respectively, he stated:

"National League of Cities certainly does not limit all exercise of Commerce Clause legislation against the states. This is clear from the Court's re-affirmation of Fry v. United States (1975) 421 U.S. 542, 95 S.Ct. 1792, 44 L.Ed.2d 363. Further, although the statutory scheme at issue in National League of Cities and the one at issue here are both based on Congressional power derived from the Commerce Clause, Congressional intent under the Equal Pay Act was to bar discrimination on the basis of sex. Aside from viewing this as a minimal intrusion of the states' freedom to structure integral operations, this Court is of the opinion that it is appropriate to apply the principles growing out of the cases arising under Title VII of the Civil Rights Act (42 U.S.C. § 2000e) to Equal Pay Act cases. Hodgson v. Corning Glass Works (W.D.N.Y. 1971) 330 F.Supp. 46, 49. The provisions of the two acts should be read together 'since both statutes serve the same fundamental purpose.' Shultz v. Wheaton Glass Co. (3rd Cir., 1968) 421 F.2d 259, 266, cert. denied, 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970). See also, Orr v. MacNeill & Son, Inc. (5th Cir., 1975) 511 F.2d 166; Ammons v. Zia Co. (10th Cir., 1971) 448 F.2d 117; Hodgson v. Brookhaven General Hospital (5th Cir., 1970) 436 F.2d 719. That Title VII can still be validly applied to State governments and their political subdivisions remains a viable proposition. See Fitzpatrick v. Bitzer * * *."

In Hodgson v. Corning Glass Works, supra, at 49–50, the Honorable John T. Curtin of this Court said:

"It is appropriate to apply the principles growing out of the cases arising under Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e–2] to Equal Pay Act cases, since the purpose of both Acts is to eliminate employment discrimination. Shultz v. Wheaton Glass Co., 421 F.2d 259, 266 (3d Cir.), cert. denied, 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970)."

In Shultz, supra, 421 F.2d, at 266, the Third Circuit Court of Appeals points to a congres-

Fort Madison Community School District, 79 LC 47506 (¶ 33,419) (S.D.Iowa 1976).[3]

sionally expressed working interrelationship between the Equal Pay Act and Title VII. Counsel for plaintiff handed to me at oral argument a mimeographed copy of a "CURRENT LIST OF CASES DECIDED AFTER NATIONAL LEAGUE OF CITIES * * * AND FITZPATRICK * * *." In addition to the Allegheny County Institution Dist., Christensen, Fort Madison, Bettendorf, Washoe and Dallas Independent School District cases, the following are said to be supportive of the applicability of the Equal Pay Act to a state or a political subdivision of a state: Usery v. Charleston County School District, 79 LC 47531 (¶ 33,431) (D.S.Car.1976); Usery v. Sioux City Community School District, not reported (N.D.Iowa 1976); Usery v. Berkeley Unified School District, not reported (N.D.Calif.1976); Usery v. Kent State University, not reported (N.D.Ohio, 1976); Usery v. University of Nevada, 79 LC 47618 (¶ 33,456) (D.Nev. 1976); Usery v. Univ. of Texas at El Paso, 79 LC 47594 (¶ 33,448); Usery v. Memphis State University, 79 LC 47611 (¶ 33,452) (W.D.Tenn. 1976); Usery v. Baltimore Co. School District, not reported (D.Md.1976); Usery v. City of Brockton, not reported (D.Mass.1976); Usery v. Morrissey, 79 LC 47617 (¶ 33,455) (D.Mass. 1976); Usery v. Tennessee Technological University, (M.D.Tenn.1976); Usery v. Austin Peay State University, (M.D.Tenn.1976); Usery v. Kenosha Unified School District Number One, (E.D.Wisc.1976); and Usery v. City of Sheboygan, (E.D.Wisc.1976). Howard v. Ward County, 418 F.Supp. 494 (D.N.Dak.1976), and Usery v. Owensboro-Daviess County Hospital, 423 F.Supp. 843 (W.D.Ky.1976), are said to hold against the Secretary of Labor on this issue. Also, three district courts are said to have upheld the application of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634, to states and their political subdivisions. Usery v. Board of Ed. of Salt Lake City, 421 F.Supp. 718 (D.Utah 1976), Springer v. City of Los Angeles, not reported (C.D.Calif.1976), and Aaron v. Davis, 424 F.Supp. 1238 (W.D.Ark. 1976).

The two contrary holdings re the Equal Pay Act, Howard and Owensboro-Daviess, are of interest. I note from counsel's list that an appeal has been taken in Owensboro-Daviess by the Government. No appeal, however, is indicated as having been taken from the "adverse" decision in Howard wherein the holding was made July 30, 1976. (The court finally held for plaintiff who obviously would not appeal and the Secretary, not being a party, could not. His counsel does list it as a contrary holding.) Plaintiff Howard, a female deputy sheriff in Ward County, complained of salary discrimination based on sex and claimed jurisdiction under and violations of both Title VII

Note 8—Continued

and the Equal Pay Act. The court held that the latter was not applicable to defendant on the basis of *National League of Cities.* "Since the Equal Pay Act is part of FLSA and takes its definition of 'employer' therefrom", the court said (418 F.Supp., at 500), "it follows that the Defendants [the county and the sheriff] are not 'employers' within the coverage of the Equal Pay Act." As to the plaintiff's Title VII claim, the court declared that defendants were "employers" for Title VII purposes and held that "the coverage of state and local governments under Title VII is within Congressional power under the Fourteenth Amendment, the basis on which Congress extended coverage to these entities." (*Id.,* at 501.) Then, pursuant to the aforementioned Congressionally expressed and intended interrelationship between Title VII and the Equal Pay Act, the court proceeded to apply the latter's guideposts to decide whether there had been a sex-based salary discrimination in violation of Title VII. Such discrimination was found and monetary and injunctive relief was awarded plaintiff against the county. In *Owensboro-Daviess* the District Court hewed to a seemingly overly simplistic line of reasoning—to wit, the FLSA embodied a single definition of "employer" which *National League of Cities* has ruled to be inapplicable to states or their subdivisions insofar as standards of minimum pay and maximum hours are concerned and the statute's separability clause could not practically be applied so as to accord one definition of employer in that type of case and another in an equal pay case. The jurist who had prior to the decision in *National League of Cities* granted dismissal at the conclusion of the plaintiff's case and had had the cause remanded to him under directions that he hear the entire case, refused to "reach out for the Fourteenth Amendment". As mentioned earlier, plaintiff's counsel indicates that the decision has been again appealed.

*Usery v. Board of Ed. of Salt Lake City, supra,* is interesting because the therein-alleged discrimination concerned age which is not one of the bases (*i. e.,* race, color, religion, sex or national origin) enumerated in Title VII's § 703(a)(1), 42 U.S.C. § 2000e–2(a)(1). Defendant moved for summary judgment which the court denied. There is no gainsaying that the Honorable Aldon J. Anderson clearly and explicitly ruled that the Commerce Clause, in and by itself, gave Congress the power to make applicable to states and their political subdivisions such prohibitions against discrimination by reason of age. (p. 720) His opinion then states (pp. 720–1):

"While congressional power under the Commerce Clause supports the extension of the ADEA's age discrimination provisions in 29 U.S.C.A. § 623(a) (1975) to state employers under the balancing approach that the Court adopted in *National League of Cities,* plaintiff raises an additional constitutional ground which independently upholds Section 623(a). Shortly after the *National League of Cities* decision, the Court, in *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d .614 (1976), upheld state employees' recovery of money damages against state employers as provided in 42 U.S.C.A. §§ 2000e *et seq.* (1974) (Title VII) over the state's challenge that monetary recovery for discriminatory employment practices from the state treasury violated the state's sovereignty. The Court recognized that Title VII was 'appropriate' legislation' under Section 5 of the Fourteenth Amendment to implement the substantive guarantees of Section 1 of that Amendment. 96 S.Ct. at 2666 n. 9.

"In light of the similar statutory and constitutional objectives of Title VII and Section 623(a) of the ADEA to prohibit arbitrary and discriminatory employment criteria based on race, color, religion, sex, national origin, or age [Note: It appears that the jurist is guilty of *some degree of inadvertence here in imply-*ing that age discrimination is banned by Title VII.] and in the absence of a clear expression by Congress in the ADEA of the constitutional foundation for this legislation in the Commerce Clause or the Fourteenth Amendment, this court interprets the ADEA's age discrimination limitations on state employers in 29 U.S.C.A. § 623(a) (1975) as constitutionally *permissible under either the Commerce* Clause or the Fourteenth Amendment. The Fourteenth Amendment is particularly applicable in the present circumstances where allegations of arbitrary discrimination in employment practices by a state employer, contrary to Section 623(a) of the ADEA, if proven, would constitute forbidden state action that denies equal protection of the law. The Court in *National League of Cities* specifically expressed no view on whether Congress could achieve 'different results [in] affect[ing] integral operations of state governments by exercising authority granted it under other sections of the Constitution such as . . . § 5 of the Fourteenth Amendment.' 96 S.Ct. at 2474 n. 17. The Court in *Fitzpatrick* recognized that by Section 5 of the Fourteenth Amendment,

Congress is expressly granted authority to enforce 'by appropriate legislation' the substantive provisions of the Fourteenth Amendment, which themselves embody significant limitations on state authority. When Congress acts pursuant to § 5, not only is it exercising legislative authority that is plenary within the terms of the constitutional grant, it is exercising that authority under one section of a constitutional Amendment whose other sections by their own terms embody limitations on state authority. We think that Congress may, in determining what is 'appropriate legislation' for the purpose of enforcing the provisions of the Four-

Note 8—Continued

teenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts.

96 S.Ct. at 2671. *See also Ex Parte Virginia*, 100 U.S. 339, 345–48, 25 L.Ed. 676 (1880). "This court therefore holds that the age discrimination provisions of Section 623(a) of the ADEA as imposed on state employers are constitutional limitations upon the exercise of state authority in a traditional and integral area of state governmental operations insofar as Section 623(a) is enacted pursuant to congressional authorization under Section 5 of the Fourteenth Amendment to enforce the substantive guarantees of Section 1 of that Amendment."

Telephonic inquiry of the Clerks of the respective courts on February 3, 1977 gained information that no opinion had been filed in *Baltimore Co.*, that decision still was reserved in *City of Brockton* and that no order had been yet docketed in *Kenosha* (although it is presumed that the determinations therein and in *City of Sheboygan* are considered and dealt with in the opinion which has been filed in the latter case). In *Usery v. Charleston County School District, supra*, the district court denied defendants' motion to dismiss the complaint as to alleged violations of the Equal Pay Act saying that the applicability of *National League of Cities* "involves a controlling question of law as to which there is substantial grounds for difference of opinion and that an immediate appeal from this order as authorized by 28 U.S.C. § 1292(b) may materially advance the ultimate termination of the litigation." *Id.*, 47532. The counsel's list notes the granting of an interlocutory appeal by the Fourth Circuit Court of Appeals.

Defendant's motion to dismiss was denied in *Usery v. Sioux City Community School District, supra*, on the basis of the same court's decision in *Christensen, supra*.

Dismissal was denied in *Usery v. Berkeley Unified School District, supra*, solely on the ground that *National League of Cities* "does not extend to the Equal Pay Act and is not controlling here."

After trial in *Usery v. Kent State University, supra*, the trial court had granted injunctive relief and monetary damages. Thereafter, *National League of Cities* was decided and its effect was considered. The court ruled that this Supreme Court declaration "should be confined strictly to its factual context" and quoted from and followed the *Christensen* decision. In *Usery v. University of Nevada, Reno, supra*, defendant's motion to dismiss was denied for the reasons set forth in the same jurist's opinion in *Usery v. Washoe County School District, supra*.

In *Usery v. University of Texas at El Paso, supra*, the trial judge denied defendant's motion to dismiss, noting that the equal pay provisions of the Act had not been considered in

*National League of Cities*, that "discrimination on the basis of sex cannot be considered a fundamental employment decision which is essential to a state" and that *National League of Cities* "cannot be construed to limit the power of Congress to apply the equal pay provisions of the * * * Act to the states and their political subdivisions and public agencies". There is no discussion of the particular source or sources of Congressional power.

*Usery v. Memphis State University, supra*, sustained the Equal Pay Act's applicability and denied a motion to dismiss in a somewhat indecisive decisional opinion which concluded (at page 47614):

"The thrust of plaintiff's argument is that *National League of Cities, supra*, does not invalidate the Amendments to the Equal Pay Act since the amendments [expanding applicability to states, etc.] can be based on grants of congressional power other than the commerce clause.

"Whether the amendments' application to the Equal Pay Act is separable from their application to the remainder of the FSLA is a matter of considerable doubt. On the other hand, the amendments as applied to the Equal Pay Act may well have been enacted pursuant to Congress' exercise of its spending power as well as its power under § 5 of the Fourteenth Amendment. See *Usery v. Board of Education of Salt Lake City* [421 F.Supp. 718] (No. C–75–510, 9/1/76, D.Utah)."

In *Usery v. Morrissey, supra*, defendants' motion to dismiss was denied "[u]pon consideration of the factors [financial cost and detriments to personnel programs] noted in the majority opinion of the Court in *National League of Cities* [426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245], 44 U.S.L.W. at 4977–79, and the gloss put upon those factors in the concurring opinion of Mr. Justice Blackmun [at 856, 96 S.Ct. 2465] 44 U.S.L.W. at 4980; and further, upon consideration of at least ten district court cases and one circuit court case, cited by plaintiff, which support the proposition that the *National League of Cities* decision does not affect enforcement of the Equal Pay Act against states or their political subdivisions". In *Usery v. Tennessee Technological University, supra*, and *Usery v. Austin Peay State University, supra*, defendants' motions to dismiss were denied and immediate appeals were authorized. It was noted that the ruling in *National League of Cities* "was not absolute"—i. e., "that all attempts by Congress to affect the integral operations of state governments are prohibited." "The Court", it was opined, "specifically noted that it was expressing no view as to what the results would be if Congress attempted to exercise authority granted to it by other sections of the Constitution, such as the Spending Power, Art. I, § 8, cl. 1, or § 5 of the Fourteenth Amendment." Reference was

Respectfully, I consider *Usery v. Allegheny County Institution Dist., supra,* as presenting the correct analysis of what is before me for decision and as pointing to the distinction between the same and what was submitted to the Supreme Court in *National League of Cities v. Usery, supra.* Section 206(d)(1) draws its life and power from the Fourteenth Amendment *and* the Commerce Clause. In that sense and to that degree I consider the decisions in *Christensen v. State of Iowa, supra,* and *Usery v. Morrissey, supra* (in footnote 8), to be erroneous and decline to follow their reasoning (although I reach the same end result). Based on my interpretation of the Supreme Court's decisions in *National League of Cities* and *Fitzpatrick,* set forth above, and the Third Circuit Court of Appeals' holding in *Allegheny County Institution Dist.,* I hold that Congress had the power to extend the equal pay provisions of the FLSA to the states and their political subdivisions pursuant to both the Commerce Clause *and* the Fourteenth Amendment.

It is therefore hereby

Note 8—Continued
made to Mr. Justice Blackmun's "balancing approach" and the denials of defendants' motions to dismiss were bottomed on the conclusion that the Equal Pay Act presented but a "minimal intrusion on the state's freedom to structure its integral operations".
In *Usery v. City of Sheboygan, supra,* dismissal was denied for reasons set forth in the same court's opinion in *Usery v. Kenosha Unified School District Number One, supra,* issued on the same day and an immediate appeal was authorized. (As noted above, the Clerk of the United States District Court for the Eastern District of Wisconsin had advised that no order had been filed in *Kenosha* as of February 3, 1977 which mis-information was undoubtedly inadvertent but has resulted in my not having that opinion for study.)
*Usery v. Board of Regents for Oklahoma Agricultural and Mechanical Colleges,* (E.D.Okla., 1976) (not reported) was cited by plaintiff's counsel as an instance in which an employer's motion to vacate a prior monetary judgment in a minimum wage/maximum hours case was denied. However, that ruling has no pertinency. A consent decree, reached prior to *National League of Cities,* was to be given continued effect as a contract despite the asserted "change in the law".

ORDERED that defendant's motion to dismiss is denied.

In *Aaron v. Davis, supra,* the court had struck down a provision of an ordinance of the City of Little Rock as in conflict with the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* The provision mandated firemen's retirements at age 62. A firemen's union had gained intervention and moved for reconsideration on the ground, *inter alia,* that the Act was unconstitutional as applying to traditional governmental functions, such as fire departments, of state and local governments. Reliance was placed on the holding in *National League of Cities.* Reconsideration was denied because the Act did not "significantly interfere" with the state's or local government's policy choices or its allocations of financial resources to provide fire protection. Also, "the Act will require no greater alteration or displacement of the states' abilities to structure employer-employee relationships and deliver essential governmental services than does Title VII of the Civil Rights Act" and "is plainly appropriate legislation to enforce equal protection against state action which discriminates on the basis of age". In a footnote, the court alluded to practices which could be prohibited by legislation authorized by § 5 of the Fourteenth Amendment.