W. J. USERY, Jr., Secretary of Labor, United States Department of Labor, Appellee,

v.

CHARLESTON COUNTY SCHOOL DISTRICT OF CHARLESTON COUNTY, SOUTH CAROLINA, and Dr. Alton C. Crews, Superintendent of the Charleston County School District, Appellants.

No. 76–2340.

United States Court of Appeals, Fourth Circuit.

Argued April 6, 1977.

Decided July 25, 1977.

Arvid R. Lesemann, Jr. and Augustine T. Smythe, Charleston, S. C. (Buist, Moore, Smythe & McGee, Charleston, S. C., on brief), for appellants.

Lois G. Williams, Atty., U. S. Dept. of Labor, Washington, D. C. (Bobbye D. Spears, Regional Sol., Alfred G. Albert, Acting Sol. of Labor, Carin Ann Clauss, Associate Sol., U. S. Dept. of Labor, Washington, D. C., on brief), for appellee.

Before CLARK, Supreme Court Justice,* HAYNSWORTH, Chief Judge, and RUSSELL, Circuit Judge.

DONALD RUSSELL, Circuit Judge:

The Charleston County (South Carolina) School District and its superintendent appeal from the denial of their motion to dismiss [1] a suit brought against them by the Secretary of Labor to enforce the provisions of the Equal Pay Act.[1a] The sole question presented is whether the Supreme Court's decision in *National League of Cities v.*

---

* Sitting by designation. Justice Clark after argument expressed agreement with the result but died before the opinion was prepared.

1. The district court certified the issue for interlocutory appeal under 28 U.S.C. § 1292(b) and we granted leave to appeal.

1a. Equal Pay Act of 1963, 77 Stat. 56, (§ 6(d) of the Fair Labor Standards Act), 29 U.S.C. § 206(d)(1).

Initially, the suit also sought enforcement of the overtime provisions of the Fair Labor Standards Act. However, that portion of the suit was dismissed after the decision in *National League of Cities v. Usery, infra.*

*Usery* [2] precludes application of those provisions to state and local governments. Concluding that it does not, we affirm the denial of appellants' motion.

The Equal Pay Act prohibits sex-based wage differentials. It was enacted in 1963 as an amendment to the Fair Labor Standards Act (FLSA).[3] At that time the FLSA (and thus the Equal Pay Act) did not apply to state and local government employment. However, the Fair Labor Standards Amendments of 1966 [4] and 1974 [5] substantially eliminated that exemption.[6]

In *National League of Cities*,[7] the Supreme Court held that extension of the minimum wage and overtime provisions of the FLSA to state and local government employees was not a permissible exercise of Congress' power under the Commerce Clause.[8] The Court reasoned that the Tenth Amendment and principles of federalism inherent in the Constitution place an affirmative limitation on use of the commerce power to regulate the conduct of the states as states. Application of the FLSA's minimum wage and overtime standards to states and their subdivisions transgressed that limitation because it "operate[d] to directly displace the States' freedom to structure integral operations in areas of traditional governmental functions." [9]

Like the provisions at issue in *National League of Cities*, the Equal Pay Act purports to regulate employment policies. However, unlike those provisions, the Equal Pay Act is an anti-discrimination measure; and, as such, may be viewed as an exercise of Congress' power to adopt legislation enforcing the Fourteenth Amendment's guarantee of equal protection of the law. *Usery v. Allegheny County Institution Dist.*, (3d Cir. 1976) 544 F.2d 148, *cert. denied*, 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 793, 1977; Note, *Applying the Equal Pay Act to State and Local Governments: The Effect of National League of Cities v. Usery*, 125 U.Pa.L.Rev. 665, 677 (1977). *Cf. Fitzpatrick v. Bitzer* (1976) 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614.

If the Act is so viewed, there is no doubt that application of its provisions to state and local governments is a valid exercise of

**2.** 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976).

**3.** 29 U.S.C. §§ 201–219.

**4.** Pub.L. No. 89–601, § 102(b), 80 Stat. 830 (current version at 29 U.S.C. §§ 203(d), 203(x)).

**5.** Pub.L. No. 93–259, § 6(a)(1), 88 Stat. 55 (codified at 29 U.S.C. §§ 203(d), 203(x)).

**6.** Public officeholders, their staffs and advisors continue to be exempt. 29 U.S.C. § 203(e)(2)(C). Executive, administrative and professional personnel are exempt from the FLSA's minimum wage and overtime provisions. 29 U.S.C. § 213(a)(1), but not from the provisions of the Equal Pay Act, Education Amendments of 1972, 86 Stat. 235 at 375.

**7.** The discussion of the analysis in *National League of Cities* in this opinion is necessarily brief. For more complete explication of that reasoning, *see, e. g.,* Barber, *National League of Cities v. Usery: New Meaning for the Tenth Amendment,* in 1976 The Supreme Court Review 161 (Kurland ed. 1977); and Note, *At Federalism's Crossroads: National League of Cities v. Usery,* 57 Boston U.L.Rev. 178 (1977).

**8.** Apparently the Court's holding is applicable only with respect to employees engaged in areas of traditional governmental functions. *See* 426 U.S. at 854 n. 18, 96 S.Ct. 2465. That distinction is not significant in this case, however, since we conclude below that the Equal Pay Act may constitutionally be applied to *all* state employees.

**9.** 426 U.S. at 852, 96 S.Ct. at 2474.

Appellee argues that, even in the light of *National League of Cities,* extension of the Equal Pay Act's coverage to state employees was within the commerce power because the ability to discriminate on the basis of sex is not an essential attribute of sovereignty. This position has received some judicial support. *See, e. g., Usery v. Dallas Independent School Dist.,* (N.D.Tex.1976) 421 F.Supp. 111; *Christensen v. State of Iowa* (N.D.Iowa 1976) 417 F.Supp. 423; and *Usery v. Kenosha Unified School District,* (E.D.Wis., Dec. 13, 1976). We do not consider it, however, because, as the discussion below demonstrates, application of the Equal Pay Act to the states is clearly sustainable without reference to the commerce power.

For the same reason, we do not reach appellee's contention that the elimination of the exemption for executive, administrative and professional personnel by the Education Amendments of 1972 (*see* note 6, *supra*) was a valid exercise of the spending power.

Congress' constitutional authority. In contrast to the commerce power, Congress' power to enforce the substantive provisions of the Fourteenth Amendment is not circumscribed by the Tenth Amendment. This is so, said the Supreme Court in *Ex parte Virginia*,[10] because

> [t]he prohibitions of the Fourteenth Amendment are directed to the States, and they are to a degree restrictions of State power. It is these which Congress is empowered to enforce, and to enforce against State action, . . . Such enforcement is no invasion of State sovereignty.
>
> \*   \*   \*   \*   \*   \*
>
> \* \* \* the Constitution now expressly gives authority for congressional interference and compulsion in the cases embraced within the Fourteenth Amendment.

In *Fitzpatrick v. Bitzer, supra,* decided four days after *National League of Cities,* the Court reaffirmed its adherence to the analysis in *Ex parte Virginia.*[11] Significantly, the Court clearly concluded in *Fitzpatrick* that Congress' power under the Fourteenth Amendment was sufficient to support application of the anti-sex discrimination provisions of Title VII of the Civil Rights Act of 1964 to state employment. As appellants concede, it follows that extension of the Equal Pay Act's coverage to the states is also within that power.

Appellants argue, however, that in this case such extension must stand or fall on the Commerce Clause because Congress did not purport to act under the Fourteenth Amendment. We cannot agree. Our duty in passing on the constitutionality of legislation is to determine whether Congress had the authority to adopt the legislation, not whether it correctly guessed the source of that power. *See* Note, *Applying the Equal Pay Act to State and Local Governments, supra,* 125 *U.Pa.L.Rev.* at 679–681. In passing the 1966 and 1974 amendments to the FLSA, Congress clearly intended to prohibit the states from establishing sex-based wage differentials. We see no persuasive reason why the courts should frustrate that intent simply because the legislative history does not contain the magic words, "Fourteenth Amendment."

Finally, appellants argue that the Equal Pay Act can no longer be applied to them because such application is dependent on the definitions of "employer" and "employee," contained in the 1966 and 1974 amendments, which were struck down in *National League of Cities.* A judicial determination of unconstitutionality, however, does not expunge the affected enactment from the statute books for all purposes.[12] We agree with the Third Circuit[13] that, although the definitions set forth by the 1966 and 1974 amendments may not constitutionally be used to subject states and their subdivisions to the FLSA's minimum wage and overtime provisions, they remain the relevant cross-references for purposes of the Equal Pay Act.

We might reach a different conclusion if there were any reason to believe that Congress would not have wanted the Equal Pay Act to apply to state employees unless the FLSA's minimum wage and overtime standards also applied to such employees. *Cf. e. g., Marchetti v. United States* (1968) 390 U.S. 39, 58–60, 88 S.Ct. 697, 19 L.Ed.2d 889. However, such is not the case. Although enacted as an amendment to the FLSA, the Equal Pay Act is separate legislation, aimed at a different evil. It was "piggy-back" onto the FLSA only for administrative convenience and economy.[14] Moreover, the

---

**10.** 100 U.S. 339, 346–48, 25 L.Ed. 676 (1879).

**11.** *See also Mitchum v. Foster* (1972) 407 U.S. 225, 238–39, 92 S.Ct. 2151, 32 L.Ed.2d 705; *Katzenbach v. Morgan* (1966) 384 U.S. 641, 650, 86 S.Ct. 1717, 16 L.Ed.2d 828; and *South Carolina v. Katzenbach* (1966) 383 U.S. 301, 308, 86 S.Ct. 803, 15 L.Ed.2d 769.

**12.** *Cf. Chicot County Dist. v. Bank* (1940) 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 and 39 Op.Att'y.Gen. 22 (1937).

**13.** *Usery v. Allegheny County Institution District, supra,* 544 F.2d at 155, n. 11.

**14.** *See, e. g.,* U.S.Code Cong. & Admin.News 687, 688 (1963):

FLSA contains a broad separability clause: "If any provision of this Act . . . or the application of such provision to any person or circumstance is held invalid, the remainder of the Act and the application of such provision to other persons or circumstances shall not be affected thereby." 29 U.S.C. § 219.

Thus, we conclude that the Equal Pay Act is severable from the minimum wage and overtime provisions of the FLSA and that its application to state and local government employees is a proper exercise of Congress' power to enforce the Fourteenth Amendment. The district court's denial of appellants' motion to dismiss is therefore

*AFFIRMED.*

\* \* \* utilization [of the FLSA] serves two purposes: First, it eliminates the need for a new bureaucratic structure to enforce equal pay legislation; and second, compliance should be made easier because both industry and labor have a long-established familiarity with existing fair labor standards provisions.