**W. J. USERY, Jr., Secretary of Labor, United States Department of Labor, Appellant,**

v.

**ALLEGHENY COUNTY INSTITUTION DISTRICT d/b/a John J. Kane Hospital, Appellee.**

**No. 76-1079.**

United States Court of Appeals, Third Circuit.

Argued Sept. 13, 1976.

Decided Oct. 28, 1976.

---

**150**

William J. Kilberg, Sol. of Labor, Carin Ann Clauss, Associate Sol., Lois G. Williams, Atty., U.S. Dept. of Labor, Washington, D.C., for appellant.

Marshall H. Harris, Reg. Sol., Philadelphia, Pa., Alexander J. Jaffurs, County Sol., Thomas H. M. Hough, Asst. County Solicitor and Special Labor Counsel, Pittsburgh, Pa., for appellee.

## OPINION OF THE COURT

Before SEITZ, Chief Judge, ALDISERT and GIBBONS, Circuit Judges.

GIBBONS, Circuit Judge.

The Secretary of Labor appeals from a final order dismissing a suit for injunctive relief against violations of § 6(d)(1) of the Equal Pay Act of 1963. 29 U.S.C. § 206(d)(1).[1] The complaint alleges that the defendant Allegheny County Institution District (District), operator of the John J. Kane Hospital, has violated the act at that hospital by discriminating on the basis of sex in the wages paid to employees performing work which requires equal skill, effort and responsibility and which is performed under similar working conditions. Specifically, the complaint alleges pay discrimination between female beauticians and male barbers, who provided hair care for patients of the hospital. After a trial the district court ruled that the admitted wage differential was not a violation. The court assumed that the defendant, a political subdivision of the Commonwealth of Pennsylvania, was subject to the Act. The judg-

---

1. 29 U.S.C. § 206(d)(1) provides:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided,* That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

ment appealed from was rendered prior to the Supreme Court's decision in *National League of Cities et al. v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). On appeal the defendant urges as an additional ground for affirmance that under the tenth amendment it is exempt from the Equal Pay Act. We reverse.

## I THE VIOLATION

■ If the district court was correct in finding that there was no Equal Pay Act violation we would be obliged to affirm on that ground and thereby avoid a decision on the constitutional law issue tendered on appeal by the defendant's reliance on the tenth amendment. Thus we consider the issue of statutory violation first.[2]

Defendant employs three beauticians and three barbers to minister to the tonsorial and cosmetic needs of Kane Hospital's 700 male and 1300 female geriatric patients. The three barbers, all men, earn $165 a month more than the three beauticians, all women. The district court held that there was no violation of the Act because (a) the Secretary failed to prove that the work performed by the barbers and beauticians was equal, and (b) even assuming the Secretary proved that the work was equal the inequality of pay was authorized by 29 U.S.C. § 206(d)(1)(iv) as a differential based on a factor other than sex. Since the parties stipulated to the wage differential and to the similarity of working conditions, the two statutory issues which were tried were "equal work" and "factor other than sex."

### (a) *Equal Work*

The district court made a conclusion of law, designated as such, that "[t]he work performed by the barbers is substantially different than the work performed by the beauticians . . . and each have different skills, duties, work performance and responsibilities, and each exerts unequal effort in the performance of their jobs." That conclusion of law must find support in the court's findings of fact, and they in turn in the record. The district court made findings on the following:

(1) Basic Work:

Women: "The female beauticians are engaged in basic hair care for female patients."

Men: "The barbers are engaged in basic hair care for the male patients."

(2) Hours:

Women: "All beauticians work from 7:30 a. m. to 3:30 p. m. Monday through Friday."

Men: "All the male barbers work from 8:00 a. m. to 4:00 p. m. Monday through Friday."

(3) Place of Work:

Women: "The work of the beauticians is divided between the floors in the women's section of the hospital and the beauty shop."

Men: "Usually in the morning, the barbers work on the floors of the hospital in the men's sections; in the afternoon one barber works in the barber shop while the other two work on the floors of the hospital."

(4) Predominant Activity:

Women: "Between 50% and 75% [of time] is spent in cutting hair . . . ."

Men: "The skills used by the barbers are strictly barbering the hair of all the male patients except four or five. . . . Hair cutting is done on the floors and in the barber shop."

(5) Additional Activities:

Women: "In addition, 25% to 50% of their time is spent in the beauty shop giving permanents, hair sets, straightening and relaxing hair. On

**2.** *Hagans v. Lavine,* 415 U.S. 528, 546, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) reaffirmed the rule of *Siler v. Louisville & Nashville R. Co.,* 213 U.S. 175, 193, 29 S.Ct. 451, 53 L.Ed. 753 (1909) that a state statutory claim, where dispositive of the merits, be adjudicated before a federal constitutional claim. The *Hagans* Court also noted "the ordinary rule that a federal court should not decide federal constitutional questions where a dispositive nonconstitutional ground is available." 415 U.S. at 547, 94 S.Ct. at 1384. We therefore review the Equal Pay Act decision before examining defendant's tenth amendment defense.

occasion they shampoo a patient, and do nail polishing and nail filing when requested. Many of the women patients need to be shaved; the beauticians shave them with an electric razor."

Men: "They do not shave the men as a general rule. The hospital aides shave the men; on occasion the barbers will help out if there is a problem. One half to two hours every two weeks they teach the hospital aides how to shave. . . . They do not shampoo or manicure patients or use chemical lotions."

Both: "Both report scalp diseases to hospital nurses. Both perform their respective skills for bedridden patients and those in geriatric chairs. At the end of each day both clean their tools and do some light cleaning of respective shops."

(6) Patient Responsibilities:

Women: "There are approximately 1300 female patients at the hospital."

. . . . .

". . . a beautician spends thirty to forty minutes to complete a hair straightening process, and one hour to an hour fifteen minutes to give a hair set."

". . . The responsibility of the beauticians is to cut the hair and perform additional beauty skills to the female patients who need or request their services."

Men: "There are approximately 700 male patients at the hospital."

". . . barbers on the average spend ten to twenty minutes cutting the hair of a male patient . . . ."

". . . The responsibility of barbers is to cut the hair of over 700 male patients."

(7) Tools:

Women: "The tools used by beauticians are scissors, thinning shears, combs, brushes, various chemical lotions, oils and creams, clippers, bobby pins, clips, irons, rollers, and electric razors. They keep a hair dryer and heater in the beauty shop. The beauticians convey their tools to the floors on a cart."

Men: "The tools used by barbers are scissors, thinning shears, combs, a clipper, a trimming clipper and neck duster. The barbers convey their tools to the floors in a kit."

(8) Effort of Performance:

"Unlike the barbers, the beauticians use several tools in addition to the basic scissors, clippers and combs which use requires more effort of performance."

(Citations to trial transcript deleted).

In view of these findings of fact on basic work hours, place of work, predominant activity, additional activities, patient responsibilities, tools, and effort, the district court erred in making the conclusion of law that the work of the barbers and the beauticians was not equal within the meaning of the statute. "Congress did not intend that inconsequential differences in job content would be a valid excuse for payments of a lower wage to an employee of one sex than to an employee of the opposite sex if the two are performing equal work on essentially the same jobs in the same establishment." 29 C.F.R. § 800.120 (1974). The statutory test is "equal skill, effort and responsibility." 29 U.S.C. § 206(d)(1).

The district court findings of fact establish that in the predominant activity, hair care of geriatric patients, the beauticians employ skill, effort, and responsibility at least equal to that of the barbers. To the extent that the beauticians perform additional duties they are duties involving higher skill and greater effort.

". . . where employees of opposite sexes are employed in jobs in which the duties they are required to perform and the working conditions are substantially the same, except that an employee of one sex is required to perform some duty or duties involving a higher skill which an employee of the other sex is not required to perform, the fact that the duties are different in this respect is insufficient to

remove the jobs from the application of equal pay standard if it also appears that the employer is paying a lower wage rate to the employee performing the additional duties notwithstanding the additional skill which they involve." 29 C.F.R. § 800.122 (1974).

The quoted regulation perfectly fits the facts found by the district court.[3] The only difference between the two jobs is that in addition to the basic task of hair care for geriatric patients the lower paid beauticians also perform cosmetic and styling tasks requiring greater skill and effort than that expended by the barbers. The basic job, skill, effort and responsibility appear to be substantially equal.[4]

Although the district court made no findings as to differences in education between beauticians and barbers, the defendant points to the evidence respecting such differences to bolster its contention that the jobs are not substantially equal. Training and education are elements of skill for the purposes of the Act. 29 C.F.R. § 800.125 (1974). In this case, however, the evidence on training tends to show similarity rather than dissimilarity of skills. Both beauticians and barbers must attend 1250 hours of required schooling in not less than nine months. The curricula of the two types of schools overlap to the extent of about 75% of the subject matter. Both beauticians and barbers study haircutting, sanitation, sterilization, and the use of antiseptics, cosmetics and electrical appliances. Barbers also study honing and stropping, skills which the district court found are little used by the barbers at Kane. Beauticians study such cosmetic skills as permanent waving, rinses, hair tinting and bleaching, wigs and hair pieces, manicuring and make-up, some of which are used at Kane. For the skills required to engage in those activities which are substantially identical at the hospital—hair care for geriatric patients—the educational background of beauticians and barbers appears to be virtually identical. Probably that identity explains why the district court did not rely on differences in training in reaching the legal conclusion that the work was unequal.

The facts found by the district court, which are amply supported by the evidence, will not support its legal conclusion that the work of barbers and beauticians at the hospital was not substantially equal. Rather those facts compel the opposite conclusion.

(b) *Factor Other Than Sex*

Section 6(d)(1) contains three specific and one general exception to the equal pay requirement. The specific exceptions, seniority, merit, and productivity systems, are not urged by the defendant. The general exception is for a payment made pursuant to "a differential based on any other factor other than sex." The district court made a conclusion of law that "(t)he differential is based on a factor other than sex." The opinion does not refer to any specific factor, however. Rather the court reasoned:

Congress has not provided that when employees of one sex are members of a licensed profession unrestricted as to sex and provide more skill and effort than do employees of the opposite sex who are members of another licensed profession unrestricted as to sex, their common employer must provide equal pay.

It is not entirely clear what was intended by the quoted language. If the court meant that the fourth exception applied because the work is unequal, the reference

---

**3.** We recognize that the Equal Pay Act did not confer statutory authority upon the Secretary of Labor to promulgate binding regulations covering the enforcement and administration of the Act. *See* H.R.Rep. No. 309, 88th Cong., 1st Sess. (1963), 1963 U.S.Code Cong. & Admin. News, p. 689. Although we are not bound by the Labor Department regulations they should be given deference and presumed valid unless in conflict with the statute. *Brennan v. City Stores, Inc.,* 479 F.2d 235, 239–40 (5th Cir. 1973).

**4.** The test is not identity, but substantial equality of the jobs. *See, e.g., Shultz v. Wheaton Glass Co.,* 421 F.2d 259, 265 (3d Cir. 1970), *cert. denied,* 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970); *Hodgson v. Fairmont Supply Co.,* 454 F.2d 490, 493 (4th Cir. 1972); *Ammons v. Zia Co.,* 448 F.2d 117, 120 (10th Cir. 1971).

to that exception adds nothing. We have concluded above that beautician and barber work at the hospital is substantially equal. And to the extent that there is a difference, the higher skill is employed by the lower paid group. If what was meant is that the difference in licensing between barbers and beauticians suffices as a matter of law to justify a discrimination in wages between men and women performing equal work under the same working conditions, in the same hospital, we do not agree.

■■■ Once the Secretary showed that the work was equal the burden shifted to the defendant to show that the differential is justified by a factor other than sex. *Corning Glass Works v. Brennan,* 417 U.S. 188, 196, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *Shultz v. Wheaton Glass Co., supra,* 421 F.2d at 267. The record before us establishes that the hospital employs no male beauticians and no female barbers. Nothing in the Pennsylvania Barber License Law prevents barbers from cutting women's hair.[5] And although the Beauty Culture Act defines beauty culture in terms of women's hair,[6] the Pennsylvania Attorney General has expressed the opinion that persons licensed under that law can work on men's hair.[7] Under Pennsylvania law, persons of either sex may be licensed in either profession, and members of either profession may serve members of either sex. As noted above, the work performed by the two professions at Kane is substantially similar. Under these circumstances, we do not regard the mere fact that the two professions are separately licensed as controlling. The distinction amounts, in this case, to a mere difference in nomenclature. As a matter of federal law, it is job content rather than job classification which controls. *See* 29 C.F.R. § 800.121 (1974); *Hodgson v. Behrens Drug Co.,* 475 F.2d 1041, 1049–50 n.12 (5th Cir.), *cert. denied,* 414 U.S. 822, 94 S.Ct. 121, 38 L.Ed.2d 55 (1973); *Hodgson v. Brookhaven Gen. Hosp.,* 436 F.2d 719, 724 (5th Cir. 1970). Therefore, on the facts in this case we conclude that the mere existence of separate statutory schemes for regulating the two professions is not a 29 U.S.C. § 206(d)(1)(iv) "factor other than sex."[8] For whatever other purposes the classification may be valid, it is not valid as a justification for the pay differential.

We conclude that on the facts found by the district court the Secretary has established a violation of the Equal Pay Act and that the defendant has not carried the burden of showing that it falls within one of the exceptions in 29 U.S.C. § 206(d)(1).

## II THE TENTH AMENDMENT CONTENTION

■ Subsequent to the district court decision, the Supreme Court in *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976) held that the minimum wage law and overtime pay provisions of the Fair Labor Standards Act[9] cannot constitutionally be applied as a

---

5. See 63 P.S. § 551 *et seq.* (Purdon's 1968).

6. Beauty Culture is defined by 63 P.S. § 507 (Purdon's 1968) to include:

 any or all work done for compensation by any person, which work is generally and usually performed by hairdressers, cosmetologists, cosmeticians, beauticians or beauty culturists, and however denominated, which work is for the embellishment, cleanliness and beautification of the women's hair . . ..

7. While Attorney General Creamer was well aware that 63 P.S. § 507 limits the practice of beauty culture to women's hair, he expressed the view that that restriction was unenforceable because it was unconstitutional.

 Thus, the section of the Beauty Culture Act, by its terms, precludes males from employing the services of cosmetologists. As such it cannot stand in light of the recent amendment to the Pennsylvania Constitution which provides: 'Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual.' Const. Art. I, Section 27. 1971 Pa.Op.Atty.Gen. No. 69, pp. 127–28.

8. We express no opinion on the relevance of state statutory classifications to § 206(d)(1)(iv) in other contexts. Our holding is limited to situations where a classification is related only to job nomenclature and is unrelated to job content at a particular place of employment.

9. 29 U.S.C. §§ 206(a), (b) (1970 ed. Supp. V), 207(a) (1970 ed.).

regulation of interstate commerce to employees in areas of traditional governmental functions because the tenth amendment limited congressional commerce clause powers. We requested supplemental briefing upon the possible effect of *National League of Cities* because the Equal Pay Act of 1963, Pub.L. 88–38, 77 Stat. 56, added a sex discrimination prohibition to the existing Fair Labor Standards Act. In the supplemental briefs and at oral argument, the defendant contended that as a political subdivision of the Commonwealth it was free of the strictures of the Equal Pay Act, while the Secretary contended the Equal Pay Act was unaffected by *National League of Cities.* We conclude that the Secretary's position is correct.

We note at the outset that in *National League of Cities* the plurality opinion expressly disclaimed any intention of ruling upon the constitutionality of the exercise of Congressional authority against the states pursuant to § 5 of the fourteenth amendment. Four days later the Court unanimously sustained the exercise of such power in *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). In *Fitzpatrick* it upheld the constitutionality of the 1972 extension of Title VII of the Civil Rights Act to state and local government employers. The latter statute prohibits sex-based employment discrimination, and *Fitzpatrick* involved such a claim. Expressly referring to *National League of Cities,* at 453, 96 S.Ct. at 2670 n. 9, the Court made it perfectly clear (1) that Congress has § 5 fourteenth amendment power to prohibit sex discrimination in employment,

and (2) that such power, despite the tenth amendment, extends to the state as an employer. Thus there is a clear constitutional justification for the Equal Pay Act.

 The district, however, urges that because the Equal Pay Act was housed in the Fair Labor Standards Act and utilizes the administrative and enforcement machinery of that Act it should be presumed to have been a commerce clause enactment, and should be held to fall, with the minimum wage law, as applied to political subdivisions of the states. But the Equal Pay Act is a separate law, enacted at a different time, and aimed at a separate problem—discrimination on account of sex in the payment of wages. Moreover, even if the Equal Pay Act is regarded as a mere amendment of the Fair Labor Standards Act, it is subject to the severability provision of the latter.[10] It would require an unusual extension of the power of judicial review of statutes to hold that a part of a statute plainly severable and patently justified by one source of Congressional authority fell merely because it was housed in a part of the United States Code which contained a provision lacking such justification.[11] Nor do we attach any significance to the fact that the legislative history of the Equal Pay Act does not explicitly rely on the fourteenth amendment. In exercising the power of judicial review, as distinguished from the duty of statutory interpretation, we are concerned with the actual powers of the national government. If the district could point to any expression in the legislative history of the Equal Pay

10. If any provision of this chapter or the application of such provision to any person or circumstance is held invalid, the remainder of this chapter and the application of such provision to other persons or circumstances shall not be affected thereby. 29 U.S.C. § 219 (1970 ed.)

11. Our conclusion that the Equal Pay Act of 1963 was unaffected by the decision in *National League of Cities et al. v. Usery, supra* compels us to clarify one point. Section 206(d)(1) refers to "employer having employees subject to any provisions of this section." State employees are subject to the provisions of

§ 206(b). Our view of *National League of Cities, supra,* is that the states have an affirmative defense against actions brought by the Secretary to enforce § 206(b) against state employers. However, the mere elimination of causes of action based on violations of § 206(b) does not read that section out of the statute for all purposes. It remains the relevant cross-reference for § 206(d)(1), such that any state employer who would be subject to the provisions of 29 U.S.C. § 206(b), but for the holding in *National League of Cities,* remains subject to the provisions of § 206(d)(1).

**156**

Act suggesting that Congress intended it to be unseverable from the Fair Labor Standards Act with respect to a specific employer we might be able, as a matter of statutory interpretation, to say that the political subdivisions of the states were intended to be exempt. There is no such expression,[12] and no room for such a construction.[13]

## CONCLUSION

The judgment of the district court will be reversed and the case remanded for further proceedings consistent with this opinion.

---

**12.** *See generally,* H.R.Rep. No. 309, 88th Cong., 1st Sess. (1963). S.Rep. No. 176, 88th Cong., 1st Sess. (1963), which accompanied S. 1409, the Senate's Equal Pay Bill, is not relevant insofar as the Senate bill was passed in lieu of the House bill only after the language of the latter was substituted for that of the former. 1963 U.S.Code Cong. & Admin.News, p. 687.

**13.** Those courts which have considered the contention that *National League of Cities v. Usery* controls on the applicability of the Equal Pay Act to state political subdivisions have rejected the contention. *E.g., Usery v. Fort Madison Community School Dist.,* No. C 75–62–1 (S.D.Iowa, motion to dismiss denied Sep-

tember 1, 1976); *Usery v. Bettendorf Community School Dist.,* No. 76–6–D (S.D.Iowa, motion to dismiss denied September 1, 1976); *Usery v. Charleston County School Dist.,* No. 76–249 (D.S.C., motion to dismiss denied August 25, 1976); *Usery v. Sioux City Community School District,* No. C–76–4024 (N.D.Iowa, motion to dismiss denied August 20, 1976); *Christensen v. The State of Iowa, et al.,* 417 F.Supp. 423 (N.D.Iowa, motion to dismiss denied August 4, 1976). *Cf. Usery v. Board of Education of Salt Lake City,* 45 U.S.L.W. 2155 (D.Utah, August 31, 1976) (Age act applies to state political subdivisions); *Riley v. University of Lowell et al.,* Civ. No. 76–1118–M (D.Mass., age discrimination, motion to dismiss denied July 22, 1976).