Joyce E. NILSEN, Plaintiff,

v.

METROPOLITAN FAIR AND EXPOSITION AUTHORITY, a corporation, Defendant,

Department of Labor, Intervenor.

No. 76 C 2856.

United States District Court, N. D. Illinois, E. D.

Aug. 18, 1977.

Irving M. King, Peggy A. Hillman, Cotton, Watt, Jones, King & Bowlus, Chicago, Ill., for plaintiff.

Roger T. Brice, Donald C. Moss, Kirkland & Ellis, Chicago, Ill., Mark L. Shapiro, U.S. Dept. of Labor, Chicago, Ill., for defendant.

## MEMORANDUM DECISION

MARSHALL, District Judge.

Plaintiff, Joyce E. Nilsen, complains that defendant, the Metropolitan Fair and Exposition Authority, discriminated against her on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964, and the Equal Pay Act of 1963. The defendant is a "political subdivision, body politic and municipal corporation" of the State of Illinois. *See Ill.Rev.Stat.* ch. 85, § 1223 (1973). It employs plaintiff in its Housekeeping Department at McCormick Place, a convention and exposition center in Chicago. Defendant moved to dismiss Count III of the plaintiff's complaint, the Equal Pay Act claim, arguing that § 3 of the Equal Pay Act is unconstitutional as applied to the defendant under the authority of ·*National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). The Secretary of Labor, Ray Marshall, intervened as a party plaintiff pursuant to 28 U.S.C. § 2403.

In *National League*, the United States Supreme Court held that the minimum wage and overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 206(a), (b), 207(a), would significantly impinge upon the states' abilities to make decisions regarding the integral governmental functions and services which the states traditionally have rendered to their citizens. These functions and services include fire and police protection, public health and sanitation, and parks and recreation, but do not include the operation of a railroad. 96 S.Ct. at 2474, 2475 n.18. The Court ruled that the minimum wage and overtime rates of state employees who perform these "integral governmental functions" impermissibly interfere with the basic attributes of sovereignty guaranteed the states and their political subdivisions by the Tenth Amendment. In its motion, the defendant contends that applying the equal pay provisions of the FLSA, 29 U.S.C. § 206(d), to local governments would wreak the same impermissible interference with integral state functions. For the reasons given below, the motion to dismiss is denied.

The first issue raised by the defendant's motion concerns the thrust of the *National League* opinion. Defendant argues that the Court there construed the definition of employer contained in 29 U.S.C. § 203(d), and that the Court in effect held that the states were not employers for the purposes of the minimum wage overtime provisions, as parts of a unified statutory scheme. Consequently, if the states are not employers for the purposes of some provisions, defendant argues that they cannot be employers for the purposes of others.

This argument incorrectly characterizes the Court's limited holding in *Na-*

*tional League,* which was that the minimum wage and overtime provisions could not be sustained insofar as they interfered with the state's exercise of their integral governmental operations. The Court did not purport to exempt all state employment relationships from the FLSA, 96 S.Ct. at 2474, 2475 n.18. Thus, given the FLSA's broad separability clause, 29 U.S.C. § 219, the minimum wage and overtime provisions need not be rendered inapplicable to all state and local government employees but only to those engaged in activities traditional and integral to state government. *National League of Cities v. Marshall,* 429 F.Supp. 703 (D.D.C. 1977) [on remand from the United States Supreme Court in *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976)]. Moreover, as the court's opinion in *Usery v. Allegheny County Institution Dist.,* 544 F.2d 148, 155 n.11 (3d Cir. 1976), suggests, *National League* merely gave the states an affirmative defense to actions by the Secretary of Labor to enforce the disputed sections against state employers, but did not read the sections out of the FLSA for all purposes.

The second issue is whether the prohibition on sex discrimination contained in the Equal Pay Act would force a state to rethink and restructure its sovereign affairs in the same manner as would the minimum wage and overtime provisions. Plaintiffs argue that while the state's power to set minimum levels of compensation for its employees implicates the state's sovereignty, the state's right to discriminate against its citizens on the basis of sex is not concomitantly essential to its separate and independent existence in the federal system. With other courts, we find the plaintiff's arguments persuasive. *E.g., Christensen v. State of Iowa,* 417 F.Supp. 423 (N.D.Iowa 1976); *Usery v. Ft. Madison Comm. School Dist.,* 79 Lab.Cas. ¶ 33,419 (S.D.Iowa 1976).

In *National League,* the Supreme Court described several ways in which the minimum wage and overtime standards of the FLSA would force the state to substantially restructure the delivery of its traditional functions and services by dictating the structure of the employer-employee relationship. For example, the state might wish to hire persons with little training, or teenagers, at less than the minimum wage, or require overtime work at less than the federally prescribed rate for its police trainees. *Id.* 96 S.Ct. at 2472. These choices would be foreclosed by the federal standards. Hence, the standards would displace state policy-making regarding certain services which have traditionally relied upon the use of quasi-volunteer labor, and regarding state programs which have as a goal the creation of employment opportunities for those who cannot easily find work in the private sector. *Id.* at 2472–73.

The equal pay provisions would not intrude into the decision to *undertake* this sort of programming, but would only require that males and females within these programs be compensated equally. Because the Equal Pay Act would not dictate a state's basic employer-employee relationships, it would not interfere with the sovereign power to deliver public services or to perform integral functions. *Christensen v. State of Iowa,* 417 F.Supp. at 425.

The Court also considered, however, the financial impact of the minimum wage and overtime provisions, and we could speculate that the Equal Pay Act might affect a local government's budget. But the pivotal factor in *National League* was that the provisions in question would substantially displace the state's decision-making in the areas traditionally considered to be the state's sovereign affairs. *Id.* 96 S.Ct. at 2473. Thus, the critical inquiry is whether the state may freely structure its employment relationships to the end that it, and not the federal government, decides how to deliver traditional services and how to perform state functions. The Equal Pay Act does not burden these choices.

■ We therefore hold that the application of the Equal Pay Act to the states and their political subdivisions is a valid exercise of Congress' Commerce Clause power, and is not prohibited by the Tenth Amendment.

■ One other issue is raised by the parties, and we reach it as an alternative basis for our decision. That issue is whether § 5 of the Fourteenth Amendment provides a constitutional predicate for enforcing the Equal Pay Act against the states and their political subdivisions. In *National League*, the Court held that the Tenth Amendment limited Congress' power under the Commerce Clause to regulate the wages of employees engaged in the traditional functions and services of local government. The plurality opinion explicitly left for another day the question of whether Congress might affect the integral operations of state governments by exercising other constitutional powers, such as § 5 of the Fourteenth Amendment. 96 S.Ct. 2474 n.17. Four days later the Court decided this question in *Fitzpatrick v. Bitzer*, upholding the constitutionality of Title VII's prohibition against sex discrimination as applied to state and local governments acting as employers. 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). The Court held that the Fourteenth Amendment granted Congress the authority to abrogate a state's sovereign authority, despite the shield of the Eleventh Amendment.

Briefly, the *Bitzer* Court was faced with the problem of determining the proper relationship between the Eleventh Amendment and Congress' enforcement power under § 5 of the Fourteenth Amendment. Noting that the Fourteenth Amendment by its very terms significantly limits the exercise of state authority, the Court reasoned that the Civil War Amendments expanded Congress' powers and correspondingly interference and compulsion in "spheres of autonomy previously reserved to the States." *Id.* at 2671. Although the Court specifically confronted the interrelationship of the Fourteenth and Eleventh Amendments, its rationale applies equally to the interaction of the Fourteenth and Tenth Amendments. *Usery v. Allegheny County Institution Dist.*, 544 F.2d 148 (3d Cir. 1976).

Defendant argues, however, that the Congress exercised its Commerce Clause power, and not its enforcement power under the Fourteenth Amendment when it passed the Equal Pay Act. It is true that, in drafting the Equal Pay Act, Congress viewed the provisions as an exercise of its power to regulate commerce. P.L. 88–38, § 2(b). But, as the Court in *Allegheny County* noted, 544 F.2d at 155, we are more concerned here with the actual powers of Congress rather than Congress' recital of the perceived source for its enactment. We find no merit in the argument that a court, searching for the constitutional predicate for a federal law, is limited to the powers enumerated in the "basis and purpose" section of the statute, *see generally Carter v. Carter Coal Co.*, 298 U.S. 238, 289–92, 56 S.Ct. 855, 80 L.Ed. 1160 (1935), particularly in light of the strong presumption of the constitutionality of congressional acts. *Buttfield v. Stranahan*, 192 U.S. 470, 492, 24 S.Ct. 349, 48 L.Ed. 525 (1904). Accordingly, we hold that the Fourteenth Amendment provides a constitutional basis for applying the Equal Pay Act to the states and their political subdivisions as employers. Defendant's motion to dismiss Count III of the plaintiff's complaint is denied.