Ray MARSHALL (Successor to W. J. Usery, Jr.), Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,

v.

CITY OF SHEBOYGAN, a Municipal Corporation, Defendant-Appellant.

No. 77–1272.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 30, 1977.

Decided May 24, 1978.

Michael J. Julka, Madison, Wis., Clarence H. Mertz, Sheboygan, Wis., for defendant-appellant.

Lois G. Williams, Atty., Labor Dept., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before SWYGERT and BAUER, Circuit Judges, and CAMPBELL, Senior District Judge.[1]

SWYGERT, Circuit Judge.

We must determine on this appeal whether Congress has the power under the Commerce Clause to extend the Equal Pay Act to state and local governmental employees. We hold that it does.

---

1. The Honorable William J. Campbell, United States Senior District Judge for the Northern District of Illinois, is sitting by designation.

## I

On March 26, 1976 the Secretary of Labor commenced this action in the district court pursuant to the Fair Labor Standards Act, *as amended*, 29 U.S.C. §§ 201 *et seq.*, to enjoin the defendant City of Sheboygan from violating the equal pay provision of the Act, 29 U.S.C. § 206(d). The Secretary alleged that the City discriminated against women employed as custodians in its public schools by paying them wages at a lower rate than that paid men doing "equal work on jobs the performance of which requires equal skill, effort, and responsibility and which are performed under similar working conditions." Section 206(d)(1).

On October 1, 1976 the City filed a motion for a judgment on the pleadings contending that under *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), Congress does not have the constitutional authority to regulate the compensation paid by a state or local government to its employees. The district court denied defendant's motion and certified the issue for interlocutory appeal under 28 U.S.C. § 1292(b). *Usery v. City of Sheboygan*, 13 E.P.D. ¶ 11,406 (E.D. Wis.1976). This court permitted the appeal to be taken on January 11, 1977.

On appeal the City reasserts its contention that this case is controlled by *National League of Cities*. It argues that *National League of Cities*, in striking down as uncon-stitutional the 1974 amendments extending the minimum wage and overtime provisions of the Fair Labor Standards Act, struck down all the 1974 amendments including the one extending the equal pay provision. In the alternative, the city maintains that the *ratio decidendi* of *National League of Cities* compels the conclusion that the Equal Pay Act cannot be applied to States and their political subdivisions. Because we reject both arguments, we affirm the order of the district court.

## II

The Equal Pay Act of 1963, an amendment to the Fair Labor Standards Act of 1938, prohibits sex discrimination in the payment of wages.[2] Enacted pursuant to the Commerce Clause, the Equal Pay Act was based upon a congressional finding that sex-based wage differentials have a substantial adverse impact on interstate commerce.[3] The means chosen by Congress to remedy this situation was to require that equal work be rewarded by equal pay. *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974).

When enacted in 1963 the Equal Pay Act, as part of the Fair Labor Standards Act, covered only employers engaged in private enterprise; States and their political subdivisions were specifically excluded from its coverage.[4] In 1966, however, the definition

**2.** The Equal Pay Act of 1963 (EPA), Pub.L. No. 88–38, 77 Stat. 56, 29 U.S.C. § 206(d)(1), provides in pertinent part:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

**3.** That Congress enacted the EPA pursuant to its powers under the Commerce Clause, Art. 1, § 8, cl. 3, is made clear from the preamble:

(b) It is hereby declared to be the policy of this Act, through exercise by Congress of its power to regulate commerce among the sev-eral States and with foreign nations, to correct the conditions above referred to in such industries.

Pub.L. No. 88–38, § 2(b), 77 Stat. 56. *See* [1963] U.S.Code Cong. & Admin.News, p. 59. Although the EPA is primarily an antidiscrimination measure, it was enacted under the Commerce Clause and not under section 5 of the Fourteenth Amendment. This was done because the EPA originally applied only to private employers who are beyond the reach of the Fourteenth Amendment.

**4.** June 25, 1938, ch. 676, § 3(d), 52 Stat. 1060, *as amended*, 29 U.S.C. § 203(d), reads:

"Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee but shall not include the United States or any State or political subdivision of a State.

of employer in the Fair Labor Standards Act was expanded to include state and local governmental workers employed in hospitals, institutions, and schools.[5] In 1974 this definition was further expanded to include a "public agency," which is broadly defined as "the government of a State or political subdivision thereof; any agency . . . [of] a State, or a political subdivision of a State; or any interstate governmental agency."[6] Thus, the 1974 amendments extended the coverage of the Fair Labor Standards Act (including the equal pay provision) to nearly all state and local governmental employees.[7]

The 1974 amendments were challenged in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). There the Supreme Court held unconstitutional the minimum wage and overtime provisions of the Fair Labor Standards Act as applied to state and local governmental employees. The basis of the Court's decision was not that the attempted extension of federal authority went beyond the scope of the Commerce Clause, but that such extension was prohibited by the Tenth Amendment which restricts the exercise of power otherwise expressly delegated to Congress.

### III

#### A.

■ The City first argues that the holding of *National League of Cities* governs this case because the Supreme Court struck down the definitions of "employer" and "employee" contained in the 1966 and 1974 amendments. The effect of *National League of Cities*, according to the City, is to erase these amendments from the statute books and to return the Equal Pay Act to its pre-1966 status. Because the 1963 Act applied only to private employers, the City maintains that the Act cannot be applied to it.

We believe that the City has incorrectly interpreted the holding of *National League of Cities*. The 1974 amendments to the Fair Labor Standards Act were not stricken across the board as the City suggests. Although the opinion frequently speaks of the "1974 Amendments to the Fair Labor Standards Act" as the subject matter of its analysis, the Court's discussion and examples of the effects of these amendments make clear that the Court ruled only on the extension of the minimum wage and overtime provisions.[8] Nowhere does the Court discuss the equal pay provision of the Fair Labor Standards Act.

Moreover, *National League of Cities* does not vitiate entirely the 1974 amendments as to the minimum wage and overtime provisions. The Court found the amendments unconstitutional only "insofar as [they] operate to directly displace the States' freedom to structure integral operations in ar-

---

**5.** Pub.L. No. 89–601, § 102(b), 80 Stat. 831, *amending* 29 U.S.C. § 203(d). The constitutional validity of the 1966 amendments was sustained in *Maryland v. Wirtz*, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968). *Wirtz*, however, was expressly overruled in *National League of Cities*.

**6.** Pub.L. No. 93–259, § 6, 88 Stat. 55, 58, 60 (codified at 29 U.S.C. §§ 203(d), 203(x)).

**7.** Executive, administrative, and professional personnel have always been exempt from the minimum wage and overtime provisions of the Fair Labor Standards Act (FLSA). *See* June 25, 1938, ch. 676, § 13(a)(1), 52 Stat. 1067. These individuals were similarly exempt from the scope of the EPA until a 1972 amendment made the EPA applicable. Pub.L. No. 92–318, Title IX, § 906(b)(1), 86 Stat. 375, *as amended*, 29 U.S.C. § 213(a)(1).

Elected public officials and their employees are exempt from all provisions of the FLSA, including the EPA. 29 U.S.C. § 203(e)(2)(C).

**8.** The limited nature of *National League of Cities* is further evident from the Court's holding:

Our examination of the effect of the 1974 amendments, as sought to be extended to the States and their political subdivisions, satisfies us that *both the minimum wage and the maximum hour provisions* will impermissibly interfere with the integral government functions of these bodies. . . . . [T]he dispositive factor is that Congress has attempted to exercise its Commerce Clause authority to prescribe *minimum wages and maximum hours* to be paid by the States in their capacities as sovereign governments.

426 U.S. at 851, 96 S.Ct. at 2473 (emphasis added).

eas of traditional governmental functions . . . ." 426 U.S. at 852, 96 S.Ct. at 2474.[9] The Court thus recognized that the minimum wage and overtime provisions are still applicable to the States in areas which are not "integral parts of [a State's] governmental activities." 426 U.S. at 854 n. 18, 96 S.Ct. at 2475. State operation of a railroad was noted as one such example where these provisions would still apply.

We agree with the Third Circuit that rather than striking down the 1974 amendments for all purposes, *National League of Cities* is limited and merely gives the States and their subdivisions an affirmative defense against actions brought by the Secretary of Labor to enforce minimum wage and overtime provisions against state and local governmental employers. *Usery v. Allegheny County Institution Dist.*, 544 F.2d 148, 155 n. 11 (3d Cir. 1976), *cert. denied*, 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 793 (1977).

B.

■ In a related argument, the City maintains that because the Equal Pay Act is only a subsection of the Minimum Wage Law,[10] the equal pay provision derivatively draws its jurisdiction from the minimum wage provision. According to the City, if

the latter provision cannot be constitutionally applied to a governmental employer, it follows *a fortiori* that neither can the former. In support thereof the City cites 29 U.S.C. § 206(d)(1): [11]

No employer having employees subject to any provisions *of this section* shall discriminate . . . between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays *wages to employees of the opposite sex* . . . . (emphasis added.)

The City interprets the phrase "of this section" to refer to all of section 206 of the Fair Labor Standards Act. We do not agree.

Although the Equal Pay Act and the Minimum Wage Law are both housed in the same section, they are distinct provisions. The Equal Pay Act, enacted twenty-five years after the Fair Labor Standards Act, has its own extensive legislative history [12] and is aimed at a separate evil—the prohibition of "discrimination on account of sex in the payment of wages." Preamble, Equal Pay Act, Pub.L. No. 88–38, 77 Stat. 56. This legislative history clearly establishes that the Equal Pay Act was added to the Fair Labor Standards Act primarily to uti-

---

9. On remand from the Supreme Court, the three-judge court rejected the argument that the Court's decision rendered the minimum wage and overtime provisions inapplicable to all state and local governmental employees. Rather, the district court held that *National League of Cities* is limited to invalidating the regulation of the hours and wages of those state and local governmental employees "engaged in activities integral to and traditionally provided by government." *National League of Cities v. Marshall*, 429 F.Supp. 703, 705 (D.D.C. 1977).

10. The minimum wage and equal pay provisions are both contained in 29 U.S.C. § 206. The overtime provision of the FLSA is found at 29 U.S.C. § 207.

11. Also cited are two sections from the Code of Federal Regulations:
Section 800.104 *Application to Employees* —[T]he legislative history of the Equal Pay Act makes it clear that coverage under the equal pay provisions is equal to that provided by the other provisions of Section 6 of the

Fair Labor Standards Act, and that those employers and employees who are subject to the minimum wage provisions will be subject to the new provisions on equal pay. 29 C.F.R. 800.104 (1977).
Section 800.105 *Employees Not Subject to Provisions* —. . . Unless such an employee is one to whom the minimum wage provisions apply, the Act does not afford protection from a discrimination in wages based on sex between such employee and an employee of the opposite sex. 29 C.F.R. 800.105 (1977).

12. [1963] U.S.Code Cong. & Admin.News at 687 *et seq. See also Hearings before the House Subcommittee on Labor on H.R. 3861, and Related Bills*, 88th Cong., 1st Sess. (1963); *Hearings before the Senate Subcommittee on Labor on S. 882 and S. 910*, 88th Cong., 1st Sess. (1963); 108 Cong.Rec. 10501–03, 14747–82, 15075–76, 16244–45, 17576, 22082–85; 109 Cong.Rec. 579–80, 1751–53, 2712, 2714, 2740, 2763, 2886–89, 4638, 7223, 7294, 7682, 8866, 8913–17, 9192–9218, 9263, 9761–62, 10265–66.

lize existing administrative and enforcement machinery.[13]

Even if the Equal Pay Act is regarded as a mere amendment to the Fair Labor Standards Act, it is subject to a severability provision which reads:

> If any provision of this chapter or the application of such provision *to any person or circumstance* is held invalid, the remainder of this chapter and the application of such provision *to other persons or circumstances* shall not be affected thereby.

29 U.S.C. § 219 (emphasis added). The normal presumption of divisibility created by such a provision[14] is even stronger here since, as noted above, the equal pay provision has a different legislative history and effects a different policy than the minimum wage and overtime provisions.[15]

We conclude that the holding of *National League of Cities* does not govern this case. This, however, does not end the inquiry because the City further argues that the *ratio decidendi* of *National League of Cities* controls the outcome of this case.

### IV

In applying *National League of Cities* it is important to note what the Supreme Court did and did not hold. It did not hold that Congress lacked the affirmative grant of legislative authority under the Commerce Clause to reach the wages and hours of state employees. Rather, it invalidated the 1974 amendments because the Tenth Amendment was interpreted as prohibiting Congress from exercising its authority.

■ It is equally clear that the Tenth Amendment does not bar Congress from ever regulating the States *qua* States. This is evident from the Court's reaffirmation of *Fry v. United States*, 421 U.S. 542, 95 S.Ct. 1792, 44 L.Ed.2d 363 (1975), wherein the constitutionality of the Economic Stabilization Act of 1970 as applied to the wages of state and local governmental employees was upheld. The question for us to decide then is whether the Tenth Amendment prohibits Congress from applying the Equal Pay Act against the States.

In *National League of Cities* the Court held that a State's power to determine the wages of its employees was an attribute of sovereignty which could not be impaired by Congress if that function was essential to a separate and independent existence. After noting the substantial financial impact

---

13. The House Report to the Equal Pay Act noted:

> Because of the long history and experience of Government and business and workers with the Fair Labor Standards Act, a simple expansion of that act to include the equal pay concept offers the most efficient and least difficult course of action.
>
> \* \* \* \* \* \*
>
> [U]tilization [of the Department of Labor under the FLSA] serves two purposes: First, it eliminates the need for a new bureaucratic structure to enforce equal pay legislation; and second, compliance should be made easier because both industry and labor have a long-established familiarity with existing fair labor standards provisions.

[1963] U.S.Code Cong. & Admin.News at 688. *See also* 109 Cong.Rec. 8914 (Remarks of Sen. McNamara); 109 Cong.Rec. 9203 (Remarks of Rep. Roosevelt); 109 Cong.Rec. 9212 (Remarks of Rep. Ryan).

14. In construing an almost identical provision, the Supreme Court stated in *Electric Bond Co. v. SEC*, 303 U.S. 419, 434, 58 S.Ct. 678, 683, 82 L.Ed. 936 (1938):

> This provision reverses the presumption of inseparability [and] establish[es] the opposite presumption of divisibility [citations omitted]. Congress has thus said that the statute is not an integrated whole, which as such must be sustained or held invalid. On the contrary, when validity is in question, divisibility and not integration is the guiding principle. Invalid parts are to be excised and the remainder enforced.

15. It has been argued that Congress did not intend to have the FLSA apply to two different sets of employers—one for the equal pay provisions and another for the minimum wage and overtime provisions. *See Usery v. Owensboro-Daviess Co. Hosp.*, 423 F.Supp. 843, 845–46 (W.D.Key.1976); *appeal docketed*, No. 77–2069 (6th Cir. 1977). The ready answer is that Congress itself has not considered the coverage of the minimum wage and equal pay provisions coextensive. For example, professional, executive, and administrative employees who have always been exempt from the minimum wage and overtime requirements are entitled to the protections of the EPA. *See* note 6 *supra*.

which the regulations would have,[16] and the fact that such regulations would greatly restrict a State's discretion to pursue alternative but legitimate employment policies,[17] the Court observed:

> If Congress may withdraw from the States the authority to make those fundamental employment decisions upon which their systems for performance of these functions must rest, we think there would be little left of the States' "separate and independent existence."

426 U.S. at 851, 96 S.Ct. at 2474. Accordingly, the extension of the minimum wage and overtime provisions of the Fair Labor Standards Act to the States was struck down.

■ Unlike the minimum wage and overtime provisions addressed in *National League of Cities*, the prerogative to pay women employees unequal wages for equal work is not a "fundamental employment decision." The ability to discriminate solely on the basis of sex cannot be considered an attribute of sovereignty necessary to a separate and independent existence. The equal pay provision does not interfere significantly with a State's ability to "structure employer-employee relationships." States are free to set all substantive terms of employment, such as wages, type of compensation, or period of employment. The Equal Pay Act requires only that the substantive terms of employment not be determined arbitrarily or in a discriminatory fashion.

Equally important, the Equal Pay Act does not displace any State policies regarding the manner in which a State may structure delivery of its services. Unlike *National League of Cities* where governments had legitimate reasons for not complying with the federal statute, the City here has no legitimate interest in penalizing a woman for her sex when she does the same job as a man.[18]

In sum, enforcement of the Equal Pay Act against the States and their subdivisions will not "[impair] the States' integrity or their ability to function effectively in a federal system." *National League of Cities*, 426 U.S. at 843, 96 S.Ct. at 2470, *quoting Fry v. United States*, 421 U.S. 542, 547 n. 7, 95 S.Ct. 1792, 44 L.Ed.2d 363 (1975). We therefore hold the 1974 extension of the Equal Pay Act to the States and their political subdivisions is a valid exercise of Congress' power under the Commerce Clause, and that the exercise of that power is not prohibited by the Tenth Amendment.[19]

The order of the district court denying defendant's motion is affirmed.

16. The Court noted that to comply with the FLSA provisions in question, States would have to either increase taxes to meet the additional financial burden or reduce the number of employees so that revenues would not have to be increased. 426 U.S. at 848, 96 S.Ct. 2465.

17. The Court noted that a State may have legitimate reasons for not complying with the FLSA wage and hour requirements. A State may wish to hire the unskilled or to offer summer employment to students, opportunities which may not be feasible if States were required to comply with the FLSA. *Id.*

18. While the City may suffer increased costs as a result of complying with the EPA (it may not lower wages paid to men to comply with the Act, 29 U.S.C. § 206(d)(1)), the effect of that impact is minimal when compared to the potential costs in the minimum wage and over-

time provisions. Furthermore, we cannot ignore the fact that the City has not alleged that it will have to raise taxes or, alternatively, release employees to comply with the EPA.

19. Because we find the EPA constitutional under the Commerce Clause, it is unnecessary to consider other sources of legislative power. We note, however, that the two courts of appeals which have addressed the question held that the EPA was a constitutional exercise of congressional authority against the States pursuant to section five of the Fourteenth Amendment. *Usery v. Charleston County School Dist.*, 558 F.2d 1169 (4th Cir. 1977); *Usery v. Allegheny County Institution Dist.*, 544 F.2d 148 (3d Cir. 1976), *cert. denied*, 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 793 (1977).