**Dr. Iris I. VARNER, Dr. Teresa M. Palmer, and Dr. Paula J. Pomerenke, on their own behalf and on behalf of all others similarly situated, Plaintiffs,**

**v.**

**ILLINOIS STATE UNIVERSITY; Robert W. Jefferson, Dean; David Strand, Provost; John K. Urice, Vice President and Provost; Thomas P. Wallace, President; the Board of Regents; including David T. Murphy; Carol K. Burns; Joseph B. Ebbesen; Carl E. Kasten; Nancy J. Masterson; Patricia A. McKenzie; James W. Myles; Barbara Scheibling; Niranjan Shah; and William Sulaski, individually and in their capacity as members of the Board of Regents, Defendants.**

No. 95–1355.

United States District Court, C.D. Illinois.

Sept. 24, 1996.

William R. Kohlhase, Miller, Hall & Triggs, Peoria, IL, Rebecca J. Wing, Nicholas P. Iavarone, Laurel G. Bellows, Joel J. Bellows, Martha A. Mills, Bellows & Bellows, Chicago, IL, for Plaintiffs.

Carol J. Hansen Posegate, Gregory K. Harris, Carol Hansen Posegate, Giffin Winning Cohen & Bodewes PC, Springfield, IL, Renee Smith–Byas, Normal, IL, Mark S. Mester, Latham & Watkins, Chicago, IL, for Defendants.

William R. Kohlhase, Miller, Hall & Triggs, Peoria, IL, for Respondents Joel J. Bellows, Laurel G. Bellows, Nicholas P. Ivarone, Rebecca J. Wing.

Sharon A. Seeley, U.S. Dept. of Justice, Civ. Rights Div., Washington, DC, for U.S., U.S. Atty. Gen.

## ORDER

MIHM, Chief Judge.

This matter is before the Court on Defendants' Motion to Dismiss [# 71] and Plaintiffs' Motion to Vacate Prior Order and for Extension of Time [# 81]. For the reasons set forth below, the Defendants' Motion is GRANTED in part and DENIED in part, and Plaintiffs' Motion is DENIED.

### Background

On March 13, 1995, three female professors employed at Illinois State University ("the University"), Dr. Iris I. Varner, Dr. Teresa M. Palmer, and Dr. Paula J. Pomerenke, filed a Complaint against Illinois State University, four officials of Illinois State University, the Board of Regents, and the ten members of the board. The Complaint has been certified as a class action on behalf of any female teaching faculty at Illinois State University who was an Assistant Professor, Associate Professor, or full Professor anytime during the period beginning with the 1982–1983 academic year up to and including the present.

The named Plaintiffs have been employed by the University as teaching faculty (in the case of one Plaintiff since 1969). Drs. Varner, Palmer, and Pomerenke allege that from the dates of their respective employment, they have been paid less than their male counterparts, given considerations of teaching experience, the number of classes and class size they taught, academic papers published, service to the University, and other matters to go to the quality of their services. The Complaint further alleges that the De-

fendants engaged in retaliation against female professors who complained of the Defendants' alleged employment practices.

### Jurisdiction

Plaintiffs brought this suit pursuant to the Equal Pay Act, 29 U.S.C. § 201, *et seq.;* Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.;* and the Civil Rights Act of 1991, 42 U.S.C. § 1981, *et seq.* This Court has jurisdiction of this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.;* the Equal Pay Act of 1963, 29 U.S.C. § 201, *et seq.;* and the Civil Rights Act of 1991, 42 U.S.C. § 1981, *et seq* .

### Discussion

In resolving a motion to dismiss, this Court must consider all well-pled facts as true and must draw all inferences in favor of the non-moving party. *Bontkowski v. First Nat. Bank of Cicero,* 998 F.2d 459, 461 (7th Cir.), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993). In ruling on a motion to dismiss, courts consider whether relief is possible under any set of facts that could be established consistent with the allegations in the Complaint. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). This Court will dismiss a claim only if it is beyond doubt that no set of facts would entitle the Plaintiffs to relief. *Venture Associates Corp. v. Zenith Data Systems Corp.,* 987 F.2d 429, 432 (7th Cir. 1993).

On August 14, 1996, Defendants filed a Motion to Dismiss, to which Plaintiffs filed a Response instanter on September 10, 1996. In support of their Motion to Dismiss, Defendants make the following arguments: (1) By adding a Defendant, Plaintiffs have amended the pleadings and should file an amended complaint; and (2) Plaintiffs cannot proceed in federal court on any claims based on the Equal Pay Act because the State of Illinois has not consented to suit. Each of these arguments will be addressed in turn.

John Urice ("Urice") was initially named as a Defendant in this case. However, Judge James B. Zagel of the Northern District of Illinois dismissed Urice in an Order dated August 18, 1995 because Urice was not alleged to have participated in the basic claims of gender discrimination and had been sued in his individual capacity. Plaintiffs then filed a related suit making similar allegations against Urice, Case No. 96–1355. On July 15, 1996, Plaintiffs filed a Motion before this Court to add Urice as a Defendant once again. The Court granted Plaintiffs' Motion on July 26, 1996, stating that Urice was to be added as a named Defendant in this case, and Plaintiffs were to submit a voluntary dismissal regarding the related case against Urice. To date, Plaintiffs have taken no steps to implement this Court's Order.

Plaintiffs have not only failed to file an amended complaint adding Urice to the present case, but they have also failed to dismiss the related action. Rather, Plaintiffs state that they are exercising "an abundance of caution" and have moved to vacate the order they requested adding Urice as a Defendant in order "to keep the Title VII and § 1981 claims presented in 96–1355 separate from the issues raised by Defendants under the Equal Pay Act." (Plaintiffs' Resp. to Mot. to Dismiss at 2.) Plaintiffs have presented no logical or practical reason why two separate suits should be conducted based on the same set of facts and similar issues. Accordingly, Plaintiffs' Motion to Vacate Prior Order is denied.

Defendants argue that adding a party generally requires an amendment to the Complaint. In the present case, they claim that the addition of Urice as a Defendant requires Plaintiffs to file an amended complaint because there are no allegations currently pending against him as a result of Judge Zagel's previous Order dismissing Urice from the case. Thus, without an amended complaint, Defendants claim that it is not currently possible to determine what allegations are pending against Urice.

While notice pleading may not require a plaintiff to plead in great detail, Rule 8 does require sufficient clarity to determine that "the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2).

The primary purpose of these provisions is rooted in fair notice: Under Rule 8, a complaint "must be presented with intelli-

gibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is."

*Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 775 (7th Cir.1994) (citations omitted). The Court also noted that a properly pled complaint allows the defendant to formulate an answer. *Id.* at 776. Additionally, "[w]here an amendment of pleadings is necessary for purposes of clarity or otherwise, after parties have been added, the complaint should be amended." *Fair Housing Development Fund Corp. v. Burke*, 55 F.R.D. 414, 415 (D.C.N.Y.1972) (quoting *Bartels v. Sperti, Inc.*, 73 F.Supp. 751 (S.D.N.Y.1947)).

■ The Court granted Plaintiffs' Motion to add Urice as a Defendant with the understanding that the claims raised in the related case were similar to those raised in the present case and involved the same set of basic facts. In doing so, the Court sought to eliminate unnecessary duplication and maximize judicial efficiency. However, Plaintiffs have not amended their Complaint to add Urice. Based on Judge Zagel's previous dismissal of Urice from this case, principles of res judicata prevent Urice from being called upon once again to answer the same Complaint. To the extent that Defendants' Motion requests that the entire suit be dismissed on these grounds, that portion of the Motion to Dismiss is denied. Nevertheless, the portion of Defendants' Motion to Dismiss requesting that Urice be dismissed for failure to file an amended complaint stating any allegations against Urice is granted. Plaintiffs have 21 days to file an Amended Complaint in this case including allegations against Urice and to voluntarily dismiss the related suit, Case No. 96–1355, in compliance with this Court's July 26, 1996 Order.

Defendants ask the Court to confirm that Urice, like the other Defendants in the case, may only be sued in his official capacity. Judge Zagel's August 18, 1995 Order held that Title VII did not permit suits against supervisory employees and dismissed all claims against Defendants in their individual capacities. However, Judge Zagel refused to dismiss claims against Defendants in their individual capacities with respect to the Equal Pay Act claims, with the exception of

Urice. Thus, with respect to Title VII claims, Urice, like the other Defendants, may only be sued in his official capacity, but no such restriction would apply with respect to Equal Pay Act claims or other claims that may be made against Urice in the Amended Complaint.

■ In their Motion to Dismiss, Defendants also allege that any claims based on the Equal Pay Act or other parts of the Fair Labor Standards Act should be dismissed because the State of Illinois has not consented to suit in federal court and such a suit therefore is prohibited by the Eleventh Amendment. Defendants cite *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), for the proposition that this Court lacks jurisdiction over these claims because Congress did not expressly waive the sovereign immunity afforded by the Eleventh Amendment to the United States Constitution.

In *Seminole Tribe*, the Court examined a provision of the Indian Gaming Regulatory Act ("the Act"), 25 U.S.C. § 2710(d)(3)(A), which requires that States negotiate in good faith with Indian tribes. The Act authorizes an Indian tribe to sue a State for breaching the duty to negotiate in good faith. 25 U.S.C. § 2710(d)(7). The Court found that Congress did not have the authority to waive Eleventh Amendment immunity under the Indian Commerce Clause and, therefore, federal courts do not have jurisdiction to hear cases arising under the Act because the State had not consented to suit. *Seminole Tribe*, 517 U.S. at 73–74, 116 S.Ct. at 1132–33.

Prior to the expansive view of sovereign immunity expressed in *Seminole Tribe*, the Supreme Court had recognized congressional authority to abrogate a state's sovereign immunity when legislation was enacted pursuant to either § 5 of the Fourteenth Amendment or the Interstate Commerce Clause, based on *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), and *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), respectively. *Seminole Tribe*, 517 U.S. at 58, 116 S.Ct. at 1125. The Court overruled its prior holding in *Union Gas*, stating that "both the result in *Union Gas* and the plurality's ratio-

nale depart from our established understanding of the Eleventh Amendment and undermine the accepted function of Article III." *Id.* The Court found that Congress could not overcome the jurisdictional bar of the Eleventh Amendment when legislating pursuant to the Interstate Commerce Clause because "Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction" by Article III. *Id.,* at 73, 116 S.Ct. at 1132. However, the Court did not disturb its prior decisions with respect to legislation enacted pursuant to the Fourteenth Amendment, "which operated to alter the preexisting balance between state and federal power achieved by Article III and the Eleventh Amendment." *Id.,* at 63, 116 S.Ct. at 1128. Thus, in the wake of *Seminole Tribe,* the only source of congressional authority capable of abrogating sovereign immunity under the Eleventh Amendment that has been recognized by the Supreme Court is legislation enacted pursuant to § 5 of the Fourteenth Amendment.

As noted by the Defendants, the Equal Pay Act is part of the Fair Labor Standards Act of 1938 ("FLSA"). Congress expressly stated that it was enacting the FLSA pursuant to its power under the Commerce Clause:

> It is declared to be the policy of this chapter, through the exercise by Congress of its power to regulate commerce among the several States and with foreign nations, to correct and as rapidly as practicable to eliminate the conditions above referred to in such industies [sic] without substantially curtailing employment or earning power.

29 U.S.C. § 202(b); *see also Marshall v. City of Sheboygan,* 577 F.2d 1, 6 (7th Cir.1978) (finding that the Equal Pay Act is a valid exercise of Congress' power under the Commerce Clause).

Plaintiffs admit that the FLSA was enacted pursuant to Congress' power under the Commerce Clause but argue that the portion of the FLSA constituting the Equal Pay Act was enacted in furtherance of the equal protection clause of the Fourteenth Amendment and therefore should be undisturbed by *Seminole Tribe,* citing *Marshall v. Owensboro–Daviess County Hospital,* 581 F.2d 116 (6th Cir.1978), in support of this position. In *Marshall,* the Sixth Circuit found that the Equal Pay Act amendments to the FLSA were authorized by § 5 of the Fourteenth Amendment. *Id.* at 119 (quoting *Usery v. Allegheny County Institution Dist.,* 544 F.2d 148 (3rd Cir.1976), *cert. denied,* 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 793 (1977), and *Usery v. Charleston County School Dist.,* 558 F.2d 1169 (4th Cir.1977)).

In *Allegheny County,* the Third Circuit rejected the proposition that because the Equal Pay Act is housed within the FLSA and uses its administrative and enforcement mechanisms, it is necessarily a Commerce Clause enactment. 544 F.2d at 155. Rather, "the Equal Pay Act is a separate law, enacted at a different time, and aimed at a separate problem—discrimination on account of sex in the payment of wages" and "Congress has § 5 fourteenth amendment power to prohibit sex discrimination." *Id.* The Fourth Circuit adopted this view in *Charleston County,* adding that, unlike the other provisions of the FLSA:

> [T]he Equal Pay Act is an anti-discrimination measure; and, as such, may be viewed as an exercise of Congress' power to adopt legislation enforcing the Fourteenth Amendment's guarantee of equal protection of the law.

558 F.2d at 1170.

The Seventh Circuit has adopted analogous reasoning with respect to the Age Discrimination in Employment Act ("ADEA"), which was also amended to authorize suits against state and local governments. *Equal Employment Opportunity Commission v. Elrod,* 674 F.2d 601 (7th Cir.1982). In *Elrod,* the Seventh Circuit set forth the test for determining whether legislation is enacted pursuant to § 5 of the Fourteenth Amendment as "whether the *objectives* of the legislation are within Congress' power under the amendment." 674 F.2d at 608 (emphasis in original).

The Seventh Circuit found that despite the fact that the ADEA was enacted pursuant to the Commerce Clause, it was also a valid exercise of Congress' power under the Fourteenth Amendment. *Id.* at 603; *see also,*

*Davidson v. Board of Governors of State Colleges,* 920 F.2d 441, 443 (7th Cir.1990). Prohibiting arbitrary or discriminatory government conduct is the "very essence" of the guarantee of equal protection under the Fourteenth Amendment. *Elrod,* 674 F.2d at 604. This reasoning is also consistent with the reasoning of the Supreme Court with regard to Title VII in *Fitzpatrick,* which was affirmed in *Seminole Tribe.* 517 U.S. at 58, 63, 116 S.Ct. at 1125, 1128.

In light of the Seventh Circuit's reasoning in connection with the ADEA cases, this Court agrees with the position taken by the Third, Fourth, and Sixth Circuits that the portion of the FLSA constituting the Equal Pay Act was enacted to prohibit discrimination in pay based on sex in furtherance of the equal protection clause of the Fourteenth Amendment. Therefore, sovereign immunity would not insulate the State of Illinois from suit under *Seminole Tribe.* Accordingly, the portion of Defendants' Motion requesting dismissal of all claims based on the Equal Pay Act is denied.

### Conclusion

For the reasons set forth herein, the portion of Defendants' Motion to Dismiss [# 71] requesting dismissal with leave to file an amended complaint adding Urice as a defendant is GRANTED and the portion requesting dismissal of the Equal Pay Act claims is DENIED. Plaintiffs' Motion to Vacate Prior Order and for Extension of Time [# 81] is DENIED. Plaintiffs have 21 days to file an Amended Complaint in this case including allegations against Urice and to voluntarily dismiss the related suit, Case No. 96–1355. This case is referred to Magistrate Judge Robert J. Kauffman.